MUTUAL TRUST COMPANY, Respondent, *v.* THE MERCHANTS NATIONAL BANK OF THE CITY OF NEW YORK et al., Appellants.

**Corporations — bills, notes and checks — pledge — result of acceptance of corporate check in redemption of stock belonging to corporation but wrongfully pledged by one of its officers — effect of knowledge by pledgee of desire of officers of corporation to recover stock in order to conceal misappropriation from bank examiner — corporation became party to transaction when its corporate check was tendered — no disaffirmance without tender of benefits received — liability to be determined by facts as they were, not as pledgee believed them to be.**

1. The utmost result of the acceptance of a corporate check is to put the payee upon inquiry to ascertain whether the corporate officers had power to issue the corporate check for the purpose for which it

was tendered, and where inquiry has been omitted the payee has the benefit, none the less, of anything that inquiry would have developed, if pressed to a conclusion.

2. A pledgee of stock, which it holds in good faith, commits no wrong in accepting in redemption thereof the check of a corporation, which was the true owner of such stock, unless it had notice, either actual or sufficient to put it upon inquiry, that the corporate officers were without power to issue the corporate check for that purpose.

3. Nor did any duty on the part of such pledgee to resist redemption arise from the fact that it knew that the officers of the corporation, a trust company, wished to get the stock back in order to conceal from a bank examiner the fact that it had once been misappropriated. The acceptance of the money does not depend for its legality upon a scrutiny of motives. The officers of the trust company, if they were empowered to pay its money to discharge a lien upon its shares, did not, in so paying, convert the money to their own use, whether the motive animating redemption be found to have been high or low.

4. A contention that the trust company was in truth not a party to the transaction; that what was done, was not for its benefit, but for the protection of its officers; that it was not a party, but a victim; and hence that it was at liberty to recover the payment without restoring the shares, leaving the defendant to some other action to reinstate its lien cannot be upheld. The trust company became a party to the transaction when it tendered its corporate check for the redemption of its property and received back what belonged to it in consideration of the payment. Even if it might have afterwards disaffirmed the transaction, it did nothing of the kind. Instead, it kept the shares and sold them. Disaffirmance is ineffective unless accompanied by the tender of benefits received.

5. Nor would the fact that defendant in restoring the shares believed that they belonged to the pledgor, though in truth they belonged to the trust company, affect its liability, which is to be determined by the facts as they were and not as it, in its ignorance, may have fancied them to be.

*Mutual Trust Co.* v. *Merchants Nat. Bank,* 204 App. Div. 357, reversed.

(Argued October 19, 1923; decided November 20, 1923.)

Appeal, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 17, 1923, unanimously affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

*George Zabriskie* and *William E. Sims* for appellants. To make the conversion of property actionable it must be wrongful. (*Hambly* v. *Trott,* Cowp. 372; *Cooper* v. *Chitty,* 1 Burr. 20; *Spencer* v. *Blackman,* 9 Wend. 167; *Baldwin* v. *Cole,* 6 Mod. 212; *Murray* v. *Burling,* 10 Johns. 172; *I. & G. Trust* v. *Tod,* 170 N. Y. 233; *Laverty* v. *Snether,* 68 N. Y. 522; *Boyce* v. *Brockway,* 31 N. Y. 490; *Schroeppel* v. *Corning,* 5 Den. 236; *Walter* v. *Bennett,* 16 N. Y. 250.) The circumstances of the case do not support an action of trover. (*Mathew* v. *Sherwell,* 2 Taunt. 439; *Hollehan* v. *Roughan,* 62 Wis. 64; *Barnes* v. *Quigley,* 59 N. Y. 265, 268; *Freeman* v. *Grant,* 132 N. Y. 22, 29; *Truesdell* v. *Bourke,* 145 N. Y. 617; *Beard* v. *Yates,* 2 Hun, 466.) The defendants have committed no wrong in receiving and collecting the check. (*H. C. R. R. Co.* v. *Knickerbocker Trust Co.,* 198 N. Y. 422; *Buckland* v. *Johnson,* 15 C. B. 145; *Kingsland* v. *Spalding,* 3 Barb. Ch. 341; *Murray* v. *Burling,* 10 Johns. 172.) The check for $90,000 was issued by the trust company for valuable consideration paid by Hatch. (*American Steel Co.* v. *Irving Nat. Bank,* 266 Fed. Rep. 41; *Border Nat. Bank* v. *American Nat. Bank,* 282 Fed. Rep. 73; *Lamborn* v. *Lake Shore Banking & Trust Co.,* 196 App. Div. 504; *Frey & Son, Inc.,* v. *Sherburne Co.,* 193 App. Div. 849; *Benecke* v. *Haebler,* 38 App. Div. 344; 166 N. Y. 631.) The plaintiff by retaining the securities with knowledge of the means by which they had been acquired, ratified the transaction. (*People's Bank* v. *Nat. Bank,* 101 U. S. 181; *Commercial Co.* v. *Beckwith,* 167 N. Y. 329; *Martindale* v. *De Kay,* 101 Misc. Rep. 728; 180 App. Div. 926; 224 N. Y. 585; *Security Warehousing Co.* v. *Am. Exchange Nat. Bank,* 118 App. Div. 350; *Atherton* v. *Beaman,* 256 Fed. Rep. 871; *Bensiek* v. *Thomas,* 66 Fed. Rep. 104; *Reynolds Banking Co.* v. *Neisler,* 130 Ga. 789; *Brewer* v. *Sparrow,* 7 B. & C. 310.) The plaintiff is not entitled to recover the money which it paid for the securities without returning them. (*McVity* v. *Albro*

*Co.*, 90 App. Div. 109; 180 N. Y. 554; *Matter of National Piano Co.*, 252 Fed. Rep. 950; *Everett* v. *Coffin*, 6 Wend. 603; *Genin* v. *Schwenk*, 62 Hun, 574; *Clark* v. *Costello*, 79 Hun, 588; *Gunning* v. *Quinn*, 81 Hun, 522.) The motives of the parties to the transaction are immaterial. (*Rudd* v. *Cornell*, 171 N. Y. 114; *Heald* v. *Carey*, 2 J. Scott [11 C. B.], 977; *Simmons* v. *Lillystone*, 8 Exch. 431.) Though there had been a conversion the plaintiff has sustained no damage. (*Kimberley* v. *Patchin*, 19 N. Y. 330; *McNaughton* v. *Cameron*, 44 Barb. 406; *Torry* v. *Black*, 58 N. Y. 185; *Stollenwerek* v. *Thacher*, 115 Mass. 224; *Wood* v. *Fisk*, 215 N. Y. 233; *McCormick* v. *Penn. Central R. R. Co.*, 80 N. Y. 353.)

*Edward F. Clark, Leonard J. Reynolds* and *Roger Hinds* for respondent. The use of $90,000 of the trust company's money for the benefit of Hatch was unauthorized; and an unlawful and tortious conversion of such money. (*Whitney* v. *Martine*, 88 N. Y. 535; *King* v. *MacKeller*, 94 N. Y. 317; *Claflin* v. *Farmers & Citizens Bank*, 25 N. Y. 293; *Graham* v. *Orange Co. Nat. Bank*, 59 N. J. L. 225; *Rochester & C. T. R. Co.* v. *Paviour*, 164 N. Y. 281; *Hathaway* v. *County of Delaware*, 185 N. Y. 368; *Ward* v. *City Trust Co.*, 192 N. Y. 61; *Kelsey* v. *Bank of Mansfield*, 85 App. Div. 334; *Lanning* v. *Trust Co. of America*, 137 App. Div. 722.) The eventual recovery by plaintiff of the Pacific stock — its own property — did not render only nominal or mitigate its damages from the conversion of its money by defendants. (*Hanmer* v. *Wilsey*, 17 Wend. 91; *Otis* v. *Jones*, 21 Wend. 394; *Higgins* v. *Whitney*, 24 Wend. 379; *Sherry* v. *Schuyler*, 2 Hill, 204; *Lyon* v. *Yates*, 52 Barb. 237; *Wehle* v. *Butler*, 61 N. Y. 245; *Tiffany* v. *Lord*, 65 N. Y. 310; *Roberts* v. *S. S. D. Co.*, 123 N. Y. 57; *Geller* v. *Rosenfeld*, 139 N. Y. 289.) Defendant bank having lost its lien, if any, on the Pacific stock by surrendering it to and for the

31

benefit of Hatch and not of the trust company, the liquidators of the trust company, whose stock it was, were entitled to realize on the stock for the benefit of its creditors and stockholders. They were not required to affirm or disaffirm the transaction by which the stock had been surrendered, to which transaction the trust company was not a party; and their retention and realization on the stock was not a ratification of such transaction. (*Standard Lumber Co.* v. *Butler Ice Co.*, 146 Fed. Rep. 359; *Colby* v. *Title Ins. & Trust Co.*, 160 Cal. 632.)

CARDOZO, J. The action is for conversion.

The defendant, the Merchants National Bank of the City of New York, loaned to one Edwin H. Hatch the sum of $200,000. One-half of this amount was loaned in May, 1915, and the other half a year later. The collateral first deposited consisted of certificates of deposit of the National Newark Banking Company, each for $100,000. In June, 1916, Hatch withdrew these certificates, and substituted 1,800 shares of Pacific Gas and Electric Company, preferred, as well as other securities not now important. Of these 1,800 shares, 1,400 stood in his own name, and 400 in the name of another. In truth, the 1,400 shares were owned by the plaintiff, the Mutual Trust Company of Orange, New Jersey, but this was unknown to the defendant. Hatch, who was the trust company's chief stockholder and one of its vice-presidents, was a thief and a forger. In addition to his misuse of the stock, he had overissued to himself the trust company's certificates of deposit. None the less, he was at all these times a man of good repute. The bank received the collateral in good faith, and was entitled to the protection of a holder in due course.

In July, 1916, Hatch, acting by his wife, made request for the delivery of the shares in return for a check for $100,000 which was tendered. The certificates at that time were in San Francisco, having been sent there at

Hatch's order to be exchanged for shares of the first preferred stock of the same corporation. This made compliance with the request impossible. Mrs. Hatch then asked the bank's cashier, one Joseph Byrne, who is joined as a defendant, to go to see her husband, who was ill. Hatch said he would like to get the stock back, explaining in a vague way that his affairs had become involved. A few days later, July 18, 1916, Byrne was summoned to a conference. Present with Hatch at this time were the chief officers of the trust company, the cashier of the National Newark Banking Company and other advisers. Byrne was asked to state the terms on which the bank would release its lien upon the shares. Only a day before, the New Jersey bank examiner had visited the trust company and was looking into its condition. The officers had learned of the unlawful pledge, and they were anxious to get the stock back so that the examiner might not miss it. Byrne said that the bank would not deliver the certificates except upon payment of $120,000. Plaintiff's officers accordingly agreed that the trust company, the plaintiff, would send its own check for $90,000 the next morning, and Hatch undertook to supply the remaining $30,000. Plaintiff's treasurer suggested that the examiners might notice the check, and Van Dusen, the cashier of the National Newark Banking Company, advised that it be taken out of order, from a stub near the end of the check book; and so it was done. Hatch was to do more, however, than pay $30,000 to the bank. He was to furnish other securities for the protection of the plaintiff. In fulfillment of this promise, he gave a second mortgage for $39,300 upon his house, and also 780 shares of the Boyertown Ore Company, which he valued at $65 a share ($50,700). The mortgage has since been collected in full, but the value of the stock is doubtful. Byrne testified that he paid little, if any, attention to these details, but they were arranged in his presence, and he had at least the opportunity to hear and understand.

On July 19 the bank received a letter from Hatch, drafted by Byrne, requesting it to accept payment of $120,000 on account, and to release 1,400 shares of the stock from the collateral, and to hold it on special deposit for the account of the plaintiff. The letter was accompanied by two checks, one for $90,000 drawn by plaintiff on the National Newark Banking Company and certified, and the other, Hatch's, for $30,000. On the same day the trust company telephoned the bank to send it the shares by registered mail, and this was done, with a letter.

Five days later the trust company was closed, and a liquidator put in charge by the state banking commissioner. The liquidator sold the shares for $126,000. He received from the Newark National Banking Company an additional payment of $20,000. He also collected the mortgage ($39,300). He now sues the defendant for the conversion of the $90,000 check or its proceeds. A verdict was directed in favor of the plaintiff for $41,595.73, the amount of the $90,000 check less the proceeds of the mortgage and the $20,000 payment. The Appellate Division unanimously affirmed.

The defendant did not commit a wrong in the acceptance of the check unless it had notice, either actual or sufficient to put it upon inquiry, that the plaintiff's officers were without power to issue the corporate check for the redemption of the stock. The defendant was the pledgee of shares which it held in good faith, and was entitled to retain. The shares belonged to the plaintiff, and Hatch, in pledging them, had been guilty of a tort, but the plaintiff could not reclaim them from a holder in due course without payment or tender of the debt which they secured. The value of the shares was $126,000. The plaintiff was getting them back upon payment of $90,000. True the payment was made upon account of Hatch's indebtedness, but the shares were not delivered to Hatch. They were to be held for the account of the plaintiff, and to the plaintiff they were delivered. *Ward*

*v. City Trust Co.* (192 N. Y. 61) is thus beside the point. If the board of directors had come to the defendant and had asked for these shares, tendering $90,000 in return, they would have been well within their rights. The liquidator himself might have done the same thing. What the bank did was to permit the true owner to redeem upon payment or reduction of the debt for which the property was pledged. It did nothing unlawful in permitting this. If the payment had been equal to the whole debt, and not merely a part, it would have risked a liability for damages or the loss of its security by doing anything else.

The plaintiff marshals other circumstances, sufficient, it is said, to put an aspect of guilt on what would otherwise be innocent. The officers of the trust company wished to get the stock back in order to conceal from the examiner the fact that it had once been misappropriated. This the defendant knew, and a duty to resist redemption is said to have arisen from the knowledge. The argument confuses what is intrinsic in the transaction with what is ulterior and collateral. It confuses the legality of the act with the purity of the motive (*Heald* v. *Carey*, 11 C. B. 977; *Simmons* v. *Lillystone*, 8 Exch. 431). The act itself was lawful, since the payment was less by many thousands of dollars than the value of the pledge. For the bank to have thwarted redemption upon such terms might have meant the loss to the trust company of the value of the equity. Its officers were asking in behalf of their corporation for what was admittedly its own. The bank, we are told, should have refused to let them have it if they were animated by the hope that the effect of restitution would be to cover up wrongdoing.

The acceptance of the money does not depend for its legality upon this scrutiny of motives. We must keep steadily before us the nature of the action. The bank is not sued for damages resulting from participation in some conspiracy to conceal from the plaintiff the pecula-

tions of its agent. If such an action were here, there would be need to define the limits of the supposed duty of disclosure. In point of fact, no damage resulted, nor was the concealment effective, for within a few days the doors of the trust company were closed with a liquidator in charge. The bank is sued not for conspiracy, but for conversion. The wrong, if it did any, became complete upon the collection of the money, though it were proved to have given notice of its suspicions the next hour to the prosecuting officer or to have proclaimed them from the housetops. All this, indeed, it could have done, unhampered by any promise of secrecy, for promise there was none. We deal here with the single question whether anything known to the pledgee at the moment of the tender brought it under a duty to turn back the money, with the inevitable consequence, of course, that it would hold on to the pledge. We think the answer is not doubtful. Conversion, however we define it, involves at least the element of an unauthorized assumption of dominion over the property of another (*Laverty* v. *Snethen*, 68 N. Y. 522, 527; Pollock Torts [10th ed.], p. 372). The officers of the trust company, if they were empowered to pay its money to discharge a lien upon its shares, did not, in so paying, convert the money to their own use, whether the motive animating redemption be found to have been high or low (*Heald* v. *Carey*, 11 C. B. 977; *Simmons* v. *Lillystone*, 8 Exch. 431). What they were free to offer, the bank was free to accept.

The trial judge took the view that the plaintiff was in truth not a party to the transaction; that what was done, was not for its benefit, but for the protection of its officers; that it was not a party, but a victim; and hence that it was at liberty to recover the payment without restoring the shares, leaving the defendant to some other action to reinstate its lien. The events, as we read them, have another interpretation. The plaintiff became a party to the transaction when it tendered its corporate check for

the redemption of its property and received back what belonged to it in consideration of the payment. Even if it might have afterwards disaffirmed the transaction, it did nothing of the kind. Instead, it kept the shares and sold them. The plaintiff argues that at the time of the sale, the full truth of the transaction was unknown to the liquidator. This might excuse the failure to return the certificates themselves. It could not excuse the failure to credit or return the proceeds. Disaffirmance is ineffective, even though belated, unless accompanied by the tender of benefits received (*Security Warehousing Co.* v. *Am. Ex. N. Bank,* 118 App. Div. 350; 132 App. Div. 925; 199 N. Y. 580; *People's Bank* v. *Nat. Bank,* 101 U. S. 181).

The Appellate Division followed a different path. The bank, in restoring the shares, believed, if Byrne is to be credited, that they belonged to Hatch. In the view of the Appellate Division, the belief made it a wrongdoer when it accepted the corporate check, though in truth the shares belonged, not to Hatch, but to the plaintiff. This is as much as to say that the bank would have been guiltless if it had known the full truth, but that liability attaches because it knew less than the truth. We think it makes no difference whether the shares went to the plaintiff because it already owned them, or because it wished for some reason to buy them or to acquire a lien upon them. But if there is any difference, the bank's liability is to be determined by the facts as they were and not as it, in its ignorance, may have fancied them to be. The utmost result of the acceptance of a corporate check is to put the payee upon inquiry to ascertain the truth. Inquiry may have been omitted. The payee has the benefit, none the less, of anything that inquiry would have developed, if pressed to a conclusion (*Ward* v. *City Trust Co., supra,* at p. 70; *Wilson* v. *Met. El. Ry. Co.,* 120 N. Y. 145, 153).

We are thus brought to the holding that no conversion

has been proved.   If, however, the contrary were assumed the damages would be nominal (*Wood* v. *Fisk*, 215 N. Y. 233, 239).   As a result of this transaction, the plaintiff has paid $90,000 for $126,000 of stock, which it has since turned into cash; it has collected in addition $39,300 on the mortgage; yet the defendant, which might lawfully have retained the shares, has been condemned to give them up and the $90,000 (less certain credits) besides.   What the plaintiff complains of as a loss has resulted in a gain.

The judgment of the Appellate Division and that of the Trial Term should be reversed, and the complaint dismissed, with costs in all courts.

POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur; HOGAN, J., concurs in result; HISCOCK, Ch. J., not sitting.

Judgments reversed, etc.