JOSEPH H. REIF, as Trustee in Bankruptcy of SHONGOOD, HART Co., INC., Respondent, *v.* EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant.

(Argued June 4, 1935; decided July 11, 1935.)

*James D. Ewing* and *Peter C. Mann* for appellant. The facts and circumstances which would have been disclosed by reasonable inquiry at the times of receipt of the checks would have dispelled any presumption that there had been an unauthorized use of the funds of the corporation. (*Martindale* v. *De Kay*, 101 Misc. Rep. 728; 180 App. Div. 926; 224 N. Y. 585; *Kepner Co.* v. *Hutton*, 179 App. Div. 130; 226 N. Y. 674; *Heig* v. *Caspary*, 191 App. Div. 560.) As reasonable inquiry by the defendant would not have disclosed for the first time to the corporation the practices of its president and prevented

their continuance, the defendant should not be held liable. (*Wilson* v. *M. E. R. Co.*, 120 N. Y. 145; *Gerard* v. *McCormick*, 130 N. Y. 261; *Cheever* v. *Pittsburgh R. R. Co.*, 150 N. Y. 59; *Rochester C. T. R. Co.* v. *Paviour*, 164 N. Y. 281; *Standard S. S. Co.* v. *Corn Exchange Bank*, 220 N. Y. 478; *Wagner Trading Co.* v. *B. P. Nat. Bank*, 228 N. Y. 37; *Ward* v. *City Trust Co.*, 192 N. Y. 61; *United States F. & G. Co.* v. *Barry*, 236 App. Div. 464; *Wen Kroy Realty Co.* v. *Public Nat. Bank & T. Co.*, 260 N. Y. 84.) The recipient of a corporate check, put on notice by the form thereof with respect to the possibility of an unauthorized use of the funds of the corporation, is not to be held liable to the corporation or its successor where it appears that the funds represented thereby were charged to the account of the officer of the corporation on its books, and that hence the corporation in making the payment was simply his agent and the funds represented not its funds but his. (*Bressman, Inc.,* v. *Mosson*, 127 Misc. Rep. 282.)

*Roy Plaut* and *Isaac M. Barnett* for Northwestern Mutual Life Insurance Company of Milwaukee, Wisconsin, *amicus curiæ.* Respondent, as successor of the rights of creditors, has no right of recovery against appellant. (*Ward* v. *City Trust Co.*, 192 N. Y. 61; *Bartlett* v. *Drew*, 57 N. Y. 587; *Darcy* v. *Brooklyn & N. Y. Ferry Co.*, 196 N. Y. 99; *Hazard* v. *Wight*, 201 N. Y. 399; *Cole* v. *Millerton Iron Co.*, 133 N. Y. 164; *Hospes* v. *Northwestern Mfg. & Car Co.*, 48 Minn. 174; *Hollins* v. *Brierfield Coal & Iron Co.*, 150 U. S. 371; *Wabash, St. L. & P. Ry. Co.* v. *Ham*, 114 U. S. 587; *Sweet* v. *Lang*, 14 Fed. Rep. [2d] 762; *Temple Lumber Co.* v. *Pineland Naval Land Stores Co.*, 25 S. W. Rep. [2d] 675; *Curtis, Jones & Co.* v. *Smelter Nat. Bank*, 43 Col. 391; *Wheeler* v. *Matthews*, 70 Fla. 317; *Davis* v. *Hemming*, 101 Conn. 713; *Burkholder* v. *Okmulgee Coal Co.*, 82 Okla. 80; *Williams* v. *Commercial Nat. Bank*,

49 Ore. 492; *Rivers-Yagers Co.* v. *Lincoln Bank & Trust Co.,* 231 Ky. 767.)

*Stanley I. La Cov* for respondent. The recipient of corporate funds charged with notice of unlawful diversion is liable for the amount received. (*Heig* v. *Caspary,* 191 App. Div. 560; *Ward* v. *City Trust Co.,* 192 N. Y. 61; *Aneless Corp.* v. *Woodward,* 262 N. Y. 326; *United States Fidelity & Guaranty Co.* v. *Barry,* 236 App. Div. 464; *Wen Kroy Realty Co.* v. *Public Nat. Bank & Trust Co.,* 260 N. Y. 84; *Rocky River Development Co.* v. *German-American Brewing Co.,* 184 N. Y. Supp. 155; *Lanning* v. *Trust Co. of America,* 137 App. Div. 722; *Moch Co.* v. *Security Bank,* 163 N. Y. Supp. 277; *McCabe Hanger Mfg. Co.* v. *Chelsea Exchange Bank,* 167 N. Y. Supp. 580; *Irving Trust Co.* v. *Gunder,* 234 App. Div. 252; *Meyer, Connor & Co.* v. *United Founders' Corp.,* 265 N. Y. Supp. 289.)

LOUGHRAN, J. Abraham Hart, as president of Shongood, Hart Company, Inc., drew in its name twenty-two checks to the order of the defendant insurance company and transmitted them in payment of premiums upon policies of insurance issued by defendant upon the life of Hart for the benefit of his wife. These checks were collected by defendant without inquiry respecting the powers of Hart as an officer of Shongood, Hart Company, Inc. That corporation thereafter became a bankrupt and plaintiff, as its trustee in bankruptcy, has recovered a judgment against defendant as a convertor of the moneys it so received within six years prior to commencement of this action. This is an appeal from an affirmance of that judgment by the Appellate Division.

The first check is dated November 5, 1926; the last one, September 5, 1931. In amount they range from $47.70 to $292.20. All were collected by defendant without protest by Shongood, Hart Company, Inc., the drawer.

Even so, we shall assume that the form of the checks made it the duty of defendant in every instance to inquire as to whether acceptance of any of the instruments would facilitate a conversion of corporate funds. " The utmost result of the acceptance of a corporate check is to put the payee upon inquiry to ascertain the truth. Inquiry may have been omitted. The payee has the benefit, none the less, of anything that inquiry would have developed, if pressed to a conclusion." (*Mutual Trust Co.* v. *Merchants Nat. Bank*, 236 N. Y. 478, 487.) Thus the question is whether investigation would have revealed facts sufficient to have persuaded this defendant that it could collect the proceeds of these checks in good faith or without making itself a party to an unauthorized diversion of assets of the corporate drawer.

The drawee in each instance was the bank of deposit of the drawer, Shongood, Hart Company, Inc. Inquiry appropriately would first have been made there. From March 12, 1921, to March 13, 1931, there was on file with that bank a resolution of the directors of Shongood, Hart Company, Inc., that its account was " subject to checks made in the corporate name, signed by its president [Hart] who is hereby authorized to make, collect, discount, negotiate, endorse, assign and deposit in the corporate name, all checks, drafts, notes and other negotiable paper; and all such checks, drafts, notes and other negotiable paper, payable to or by this corporation, signed as aforesaid (including checks drawn to Cash or Bearer or to the individual order of the officer signing said checks) shall be honored and paid by said bank, and charged to the corporation's account, hereby ratifying and approving all that said bank may do or cause to be done by virtue hereof." After March 13, 1931, this resolution was supplemented by authority to the drawee bank to honor all such commercial paper of Shongood, Hart Company, Inc., " regardless of whether or not said checks or other negotiable instruments be deposited by such officer or

agent in his individual account or otherwise used by said officer and/or agent for his personal account."

Authority so extensive necessarily would have been significant to an honest man dealing with Hart as defendant dealt with him here. Whether " the simple test of honesty and good faith " would thereby have been satisfied is nevertheless a question of fact (*Second Nat. Bank* v. *Weston*, 161 N. Y. 520, 526) which has been decided against defendant below. We cannot hold the contrary as matter of law. Doubtless the resolutions were required by the drawee bank to be filed with it for its own protection. They were not in terms a license to Hart to make checks of Shongood, Hart Company, Inc., payable to the order of his own creditors.

The next inquiry would naturally have been whether Hart " had implied authority, to be inferred from similar acts and past conduct known to the directors of the corporation and not objected to by them." (*Ward* v. *City Trust Co.*, 192 N. Y. 61, 71.) (So, *Rochester & Charlotte Turnpike Road Co.* v. *Paviour*, 164 N. Y. 281, 284.)

Shongood, Hart & Company, Inc., was organized in 1921. At all times Hart owned most of its stock and, as its president, was in complete control of its property and business. It paid him an annual salary of $10,000. Throughout its corporate existence he had year by year withdrawn its moneys in excess of that sum through payments of his individual obligations with its checks drawn by him as its president. When it went into bankruptcy, the total of those checks was $52,087.30. Concededly nobody but a bookkeeper had ever remonstrated against all this. The fact is that Shongood, Hart Company, Inc., had met all such withdrawals of its moneys by Hart in excess of his salary and that without exception it had carried his " overdrafts " upon its books as a debit against him individually.

This, then, is not a case of theft of corporate funds. Here the corporation had full knowledge that almost from the day it was organized its officer was consistently using its moneys for his individual purposes. With that knowledge, its directors continued their authority to its bank of deposit to accept as business paper checks drawn in its name by that officer to his own order. The officer was at all times largely indebted to the corporation for his personal use of its moneys, and that indebtedness was invariably entered correctly in the corporate books. We can conceive of no standard of commercial rectitude that in such a situation would excite any other than a scrupulous man to doubt the authority of the corporation's officer to pay his personal debts with its corporate paper. Clearly, as we think, Shongood, Hart Company, Inc., if solvent, would not here be heard to assert that the use made by Hart of the checks in question was beyond his power as its president.

Nothing that we have said up to this point is necessarily opposed to the view of the case taken in the courts below. As there was no conflict in the evidence a formal decision was waived, but the trial judge in a careful opinion indicated the reason which he deemed to be controlling upon his judgment. He said: " Investigation would have resulted in ascertainment of the fact that the corporation's liabilities at all times exceeded its assets. * * * Primarily, the capital of a corporation is held for the protection of its creditors and is impressed with a trust in their behalf, and the diversion of its funds, when such diversion affects the rights of such creditors, as it doubtless did here, is unlawful." In other words, defendant, as payee of the corporate checks in question, has been held to answer for a conversion of their proceeds because inquiry would have shown that the corporate drawer (which owed defendant nothing) was always at least theoretically insolvent. Upon the undisputed facts, in our opinion, this conclusion is inadmissible.

The concept of the assets of a corporation as a trust fund for the payment of its debts, upon which its creditors have an equitable lien except as against transferees in good faith and for value, has often been stated by this court. (*Ward* v. *City Trust Co., supra*, 74, and cases there cited.) First declared by Justice STORY (*Wood* v. *Dummer*, [1824] 3 Mason, 308, 311), this "trust fund doctrine" has been the subject of much adverse commentary and has often been repudiated as a fiction unsound in principle and vexing in business practice. (See 5 Pomeroy's Equity Jurisprudence [4th ed.], §§ 2319, 2320, collating the authorities.) We do not stop now to canvass the limits of such a theory. It is enough that the facts of the present case — so we hold — do not call for application of the doctrine.

The contrary ruling below was made upon the authority of *Ward* v. *City Trust Co.* (*supra*). In that case a corporate check was accepted in payment of the personal debt of corporate officers. Despite ownership by the officers of all the corporate stock, it was held that the payee was under a duty of inquiry that "went beyond the question of authority and included the rights of creditors" (p. 74). In many aspects the facts of the case were exceptional. This court said: "The form of the check and its amount [$125,000] when compared with that of the capital stock [$250,000] required investigation or inquiry as to the solvency of the company" (p. 75). A single transaction there made the corporate drawer insolvent as reasonable inquiry would have disclosed, for the payee had representatives on the drawer's board of directors. "No fact of any kind would have been discovered, because none existed, to show authority, express or implied" (p. 72).

The conceded facts now before us are different in every way. Twenty-two corporate checks were accepted by this defendant as payee. Each was for less than $300. The aggregate of all was $3,854.64. This corporate

drawer had an authorized capital of 450 shares of no par value and 275 preferred shares each of the par value of $100. These checks were delivered at intervals over a period of five years and all were collected without objection by any one. The corporate drawer remained a going concern during that time. Every fact that reasonable inquiry could have made known would have countenanced an honest belief that the checks were issued without abuse of authority.

The rule of responsibility of the payee of corporate paper is strict and sometimes harsh and is not to be extended. (*Whiting* v. *Hudson Trust Co.*, 234 N. Y. 394, 406.) We think that rule should not be stretched so as to apply it to the facts of this case upon the basis of the figurative expression that the capital of a corporation is held in trust for its creditors.

The judgment of the Appellate Division and that of the Trial Term should be reversed and the complaint dismissed, with costs in all courts.

CRANE, Ch. J., LEHMAN, O'BRIEN and CROUCH, JJ., concur; HUBBS, J., dissents; FINCH, J., not sitting.