## NEWFIELD v. OOSTERHUIS.

### In re A. STIEGLITZ & CO., Inc.

### No. 290.

Circuit Court of Appeals, Second Circuit.

Aug. 10, 1943.

438

Benjamin W. Moore, of Yonkers (Milton L. Romm, of Yonkers, of counsel) for defendant-appellee-appellant.

Mathias Naphtali, of New York City, for plaintiff-appellant.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff, who is trustee in bankruptcy of A. Stieglitz & Co., Inc., brought this action against the receiver of The First National Bank and Trust Company of Yonkers, New York, to recover moneys alleged to have been diverted unlawfully from Stieglitz & Co., Inc., and paid as premium payments and extension fee payments on two life insurance policies which were assigned by Abraham Stieglitz, the president and sole stockholder of the company bearing his name, to the bank to secure his personal note and the payment of a judgment rendered against him; and also to recover a 10% dividend, which had been declared on a deposit maintained by Stieglitz & Co. when the bank suspended business. These are the second and fourth causes of action respectively and are the only ones involved in this appeal; and for convenience they will be dealt with separately.

In respect to the second cause of action it is undisputed that Stieglitz & Co. was organized as a New York corporation with an authorized capital stock of $125,000 and that all this stock was issued to Abraham Stieglitz. Before his death, in February of 1940, Stieglitz, through his company, was engaged in the wholesale hosiery business, but the business failed and the company was adjudicated bankrupt in May of 1940. Prior to that time, on November 18, 1933, Stieglitz executed and delivered to the First National Bank and Trust Company of Yonkers, a promissory note for $18,500. payable to and endorsed by himself. This obligation was not met at the due date and thereafter, in 1936, a judgment was rendered against him for that amount plus interest in favor of the then receiver of the bank which had suspended business in March of 1933. The judgment was not satisfied, however, and supplementary proceedings were begun against Stieglitz in 1938, whereupon he delivered to the receiver the two policies of insurance, the proceeds of which are in controversy, and the proceedings were adjourned. After Stieglitz's death the receiver of the bank brought an action against the named beneficiaries of the policies and was declared the owner of the policies by assignment.

It is likewise undisputed that some of the premiums and some of the carrying charges on these policies were paid for with funds of the bankrupt. The disputed

facts and the findings made by the court below in respect to these will be discussed below in connection with the arguments the plaintiff makes on this appeal.

The plaintiff contends that the court erred in finding that the plaintiff failed to adduce proof showing that any capital had actually been paid into the corporation (since error in this finding is necessary to plaintiff's argument that the capital of the corporation was impaired by the withdrawal of funds and that the withdrawal was hence illegal); that the court erred in finding that these withdrawals were either in the nature of loans or salary to Stieglitz (because this finding, if supported by the evidence, would be independently fatal to plaintiff's cause); and that the court erred in finding that the bank had no notice or knowledge of the source of the premium and extension fee payments (since that would protect the bank as a bona fide purchaser for value). The plaintiff also argues that the court should not have excluded two exhibits which he tried to introduce.

If any of the three findings is supported by the evidence, the judgment of the court below must be affirmed; and we agree with the defendant that all three findings were supported by the evidence.

■ The plaintiff relies on § 58 of the Stock Corporation Law of New York, Consol.Laws N.Y.C. 59, which reads: "No stock corporation shall declare or pay any dividend which shall impair its capital, nor while its capital is impaired, nor shall any corporation declare or pay any dividend or make any distribution of assets to any of its stockholders, whether upon a reduction of the number or par value of its shares or of its capital, unless the value of its assets remaining after the payment of such dividend, or after such distribution of assets, as the case may be, shall be at least equal to the aggregate amount of its debts and liabilities, including capital." That § 58 has no application to the proved facts of this case is clear from two of the findings already mentioned: (1) that plaintiff failed to prove what the capital was and (2) that the withdrawals which were made were either in the nature of loans or salary. The plaintiff, however, says that the trial court fell into serious error in that it construed the word "capital" as used in § 58 to mean "paid up, issued shares of stock" and argues further that there was evidence to show that there was a surplus in the

company from 1925 to 1928 from which we must infer that the water was squeezed out of the $125,000 of authorized and issued stock and that in some manner at some time the stated capital must have been the actual capital. But it is not necessary to decide what is meant by "capital" in § 58 because the plaintiff has in any event failed to show that Stieglitz & Co. actually received its stated capital. One witness (Bodian) testified, it is true, that there was a "surplus" at one time on the books of the company; but that was only a book entry and not effective to show that the funds labelled as "surplus" would not have been so labelled had the issued stock not been paid up. Moreover, Bodian himself did not testify that the shares issued to Stieglitz were paid for by him or in any other way. There was also evidence that Stieglitz & Co. never needed any great amount of operating capital. It thus appears that the plaintiff has failed to prove what capital, if any, was actually received even if effect is given to plaintiff's broad interpretation of Randall v. Bailey, Sup., 23 N.Y.S.2d 173, affirmed 262 App.Div. 844, 29 N.Y.S.2d 512 and Small v. Sullivan, 245 N.Y. 343, 157 N.E. 261, 263, both of which cases speak of capital in the terms of value "contributed by the stockholders or otherwise obtained * * *."

■ The finding of the trial court that the withdrawals were either loans or salary payments is likewise supported by the evidence; and this, alone, of course, makes § 58 inapplicable since such withdrawals cannot be regarded as a "distribution of assets" as that phrase is used in the statute. Although it is not exactly clear whether these payments were loans or salary, they were at least charged to the personal account of Stieglitz and later transferred to accounts receivable. Moreover, it appears that Stieglitz repaid $1570.50 to the company and that this amount was credited to his personal account. In view of this evidence it would be impossible to say that the finding of the trial court was not supported by the record.

■ There is another and, in any event, decisive reason why the plaintiff must fail in his appeal. This is the adequately supported finding of the court that the bank did not know that the funds withdrawn from Stieglitz & Co. which were applied to the insurance policies had come from that company. All that the receiver of the bank did was to take the policies by assignment

as security for a debt and the payment of a judgment. At the time the assignment was made the bank was pursuing its remedy in supplemental proceedings; and when the assignment was made, the bank agreed to an adjournment of the proceedings. The plaintiff would have us infer from this that the bank was not a bona fide purchaser for value in that it was under a duty to inquire into the source of the premium payments of the policy. No such inference need be drawn, of course. See Reif v. Equitable Life Assurance Society, 268 N. Y. 269, 197 N.E. 278, 100 A.L.R. 55, and Barr & Creelman M. & P. S. Co. v. Zoller, 2 Cir., 109 F.2d 924. Moreover, there was no evidence that the bank acted in bad faith, but on the contrary the situation revealed was that of a creditor forbearing, for value received, to invoke his rightful remedies of collection.

■ Exhibits 16 and 17 were books of Stieglitz & Co., which were so marked for identification and which were found in the bankrupt's office. They were not otherwise identified than as a book showing accounts payable from Feb. 1928 to May 1929 (Ex. 16) and a general ledger for the years 1925, 1926, and 1927 (Ex. 17). There is nothing in the record to show that even if these books were admissible, which we need not decide, their exclusion amounted to more than technical error having no effect upon the substantial rights of the plaintiff. There is, therefore, no cause for reversal. 28 U.S.C.A. § 391.

The cross-appeal of the defendant on the fourth cause of action concerns only the judgment rendered against him on the claim for the 10% dividend on the deposit maintained at one time by Stieglitz & Co. at the bank. This account was later assigned to Stieglitz himself, but in bankruptcy proceedings it was determined that the assignment was invalid and that the trustee of Stieglitz & Co. was the rightful recipient of any dividends paid on this account. When the trial had advanced to the point of proceeding on this cause of action counsel for the defendant made the following statement: "Now, I have offered on certain conditions to concede that the bankrupt corporation is the owner of the deposit account with a balance of $3,250.-84 at the time the bank suspended in 1933; and we will, under the conditions I will come to, pay the trustee $325.08 representing the second dividend of 10 per cent.— the first dividend of 40 per cent has pre-

viously been paid to the corporation—and we recognize the trustee's claim for future dividends on that deposit account, on condition that the fourth cause of action be withdrawn and no judgment be entered on that cause of action.

"Now, I have told that to Mr. Naphtali, and he says that he wants to enter a judgment there so he can recover costs and get interest on the $325. We have not paid that money to him up until now because for the first time—because he had never previously given us a waiver from the estate of Abraham Steiglitz which was necessary by reason of the fact that we have in our files an assignment of that very deposit account from the corporation to A. Steiglitz individually.

"I have here in court a check for $325.-08 which we made out back in 1937 when the 10% dividend was declared, and it is made payable to Abraham Steiglitz, because it was pursuant to this assignment which was in our file. It is a check of the Comptroller of the Currency. Now, I tender that to the plaintiff so that he can have the estate endorse it to the trustee, or, if he wishes to, we will send to Washington immediately and get a check to replace this from the Comptroller of the Currency to the order of the trustee.

"Now, I do that on condition that the action be withdrawn and that no judgment and bill of costs be entered against us, because we admit that."

The following then occurred:

"The Court: Mr. Romm, all I have to do in this case is to pass judgment on the issues in the various causes of action. I cannot compel a settlement, and that is what you are seeking to have me do.

"Mr. Romm: I do not think so. As a matter of law, your Honor, there is no interest payable on a dividend check.

"The Court: All you have to do is to rest or put in proof."

The defendant then offered the assignment to Stieglitz and, when it was admitted, rested.

■ The offer to pay the trustee was, indeed, conditioned upon a withdrawal of the fourth cause of action without judgment and that offer was not accepted. The admission that the plaintiff was entitled to the dividend, apart from interest and costs, was unqualified, however, and was not withdrawn. The court found that "the

defendant admitted at the trial that the plaintiff is entitled to receive a second dividend of 10% on the corporation's deposit with the bank" and entered judgment accordingly. There was adequate ground for such a finding and, that being so, the judgment was not erroneous.

Judgment affirmed.