In re **NORTHWAY AGENCIES, INC.,** Debtor.

The **CAMEO GROUP** and Northway Exit 8 Executive Park, Inc., Plaintiffs–Appellants,

v.

David **KING,** Richard King, Estate of Constance Morrill, deceased, Defendants,

and

Northway Agencies, Inc., Defendant–Appellee.

No. 89–CV–375.
Bankruptcy No. 85–11412.
Adv. No. 88–1010.

United States District Court, N.D. New York.

Oct. 5, 1989.

---

Nolan and Hayner, Mechanicville, N.Y. for plaintiffs-appellants; Thomas D. Nolan, Jr., of counsel.

Cooper, Erving, Savage, Nolan & Heller, Albany, N.Y., for defendant-appellee Northway Agencies, Inc.; Michael Kornstein, Henry C. Collins, of counsel.

## OPINION

McAVOY, District Judge.

*Background*

Plaintiffs, as creditors of debtor Northway Agencies, Inc. (a closely-held corporation formerly doing business as Southern Saratoga Answering Exchange, a telephone answering service) commenced an adversary proceeding to object to proposed payments, under the debtor's November 10, 1987 second amended plan of reorganization, of claims made by the Estate of Constance Morrill (Morrill) and by David and Richard King (the Kings): the Morrill claim arises out of a $10,000 loan Constance Morrill made to Edward Grogan (one of two officers—along with Armand Garofalo—of the debtor), evidenced by a promissory note signed by Grogan in his individual capacity; the Kings' claim arises out of a negotiated settlement, in the amount of $50,000, of a State court action between the Kings and Grogan and Garofalo as guarantors of the obligation of Northway Agencies under an agreement involving a sale of stock to Northway Agencies for the stated price of $172,420 adjusted downward according to an agreed-upon formula. Briefly stated, plaintiffs challenged (a) the proposed payment to Morrill on the ground that the $10,000 debt is owed by Grogan alone and not by the debtor Northway Agencies and (b) the proposed payment to the Kings on the ground that the amount is well in excess of what is actually owed. (A letter to the court, dated May 23, 1989, from counsel for the Kings indicates that the Kings have been paid the $50,000 by the guarantors who now stand in the Kings' shoes.)

Following an adversary proceeding held in bankruptcy court on June 6, 1988, Judge Mahoney issued a decision and order rejecting plaintiffs' objections. With respect to the proposed payment to Morrill, the court determined that the $10,000 debt, although clearly a legal obligation of Grogan, was also an obligation of the debtor based on the following findings: (1) that the loan had been arranged by Matthew Keehan (the sole surviving principal of plaintiff The Cameo Group and the president of plaintiff Northway Exit 8 Executive Park, Inc.) for the sole purpose of obtaining funds for the debtor corporation, notwithstanding the absence of any official or shareholder interest on his part in the debtor corporation, (2) that the $10,000 check, although made payable to Grogan, was never endorsed by Grogan personally but had been endorsed by Garofalo signing Grogan's name at the direction of Matthew Keehan, who thereafter deposited the money in the debtor's account, (3) that Grogan, with no intent to

receive a personal benefit, signed the promissory note because of an understanding that the debtor corporation would repay the debt, (4) that, in view of the relationship between Constance Morrill and Matthew Keehan, Constance Morrill knew that the loan was intended to benefit the debtor corporation and that the loan would be repaid by the corporation, and (5) that the $900 interest payment made on the promissory note in late 1982 by the debtor corporation served as an acknowledgment and adoption of the debt as its own. The court discounted the significance of the listing of the debt as disputed in the debtors schedules, accepting as reasonable the debtor's explanation that it only intended to question the amount, and not the validity, of the debt.

As for the proposed payment arising out of the negotiated settlement of the State court action, the court determined that, upon review of the evidence, the debtor had owed the Kings an amount in excess of $60,000 consisting of a principal balance of approximately $39,000 plus interest up to the time of the filing of the bankruptcy petition and that therefore the proposed payment of $50,000 in complete satisfaction of the amount owed to the Kings was fair and reasonable. Essentially, the court deemed unpersuasive an alleged audit conducted in October 1983 on behalf of the debtor by an Edward Galka indicating, among other things, that the accounts receivable of Progressive Coverage, Inc. had been overstated which, under the purchase agreement, according to plaintiffs, should have resulted in a dollar-for-dollar reduction in the amount owed to the Kings and that the amount actually due and owing to the Kings was some $16,028.

Dissatisfied with the bankruptcy court's rejection of their objections to the debtor's second amended plan of reorganization, plaintiffs have pursued the present appeal. *See* 28 U.S.C. § 158(a) (Supp.1988). They contend principally that, under New York law, which the bankruptcy court failed to apply, there is insufficient evidence to support the conclusion that Northway Agencies, Inc. expressly or implicitly ratified or adopted the debt incurred by Grogan (presi-

dent of debtor Northway) in his personal capacity and that the court gave an interpretation to the stock purchase agreement that is not justified by the words of the agreement or the record and found facts for which there is no evidence in the record. For the reasons that follow, the court agrees with plaintiffs to the extent that, under the facts as found by the bankruptcy court, Northway Agencies, Inc. cannot be deemed to have assumed or adopted the personal obligation incurred by Edward Grogan. The court therefore reverses in part and affirms in part Judge Mahoney's order.

*Discussion*

■ 11 U.S.C. § 502 provides, in part, as follows:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.

(b) ... if such objection to a claim is made, the court ... shall determine the amount of such claim ... as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured [.]

11 U.S.C. § 502(a) and (b) (Supp.1989). In this regard, although as defendant-appellee Northway Agencies, Inc. points out bankruptcy courts are invested with broad equitable powers, *see Heiser v. Woodruff,* 327 U.S. 726, 732–733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946); *Pepper v. Litton,* 308 U.S. 295, 304–305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939), as the Supreme Court noted in *Pepper,* upon the inquiry into the validity of a claim asserted against the estate, the bankruptcy court has the power to disallow that claim if it is ascertained to be without lawful existence. 308 U.S. at 305, 60 S.Ct. at 244. Moreover, although defendant would have it otherwise, it cannot be, and the cases cited by defendant do not support the view, that equity would

allow a claim not otherwise legally warranted. *See, e.g., Heiser*, 327 U.S. at 732–733, 66 S.Ct. at 856; *Pepper*, 308 U.S. at 304–311, 60 S.Ct. at 244–247. In this regard then, much of what defendant argues—for example, that a bankruptcy court, in determining whether a claim is allowable, may sift the circumstances and examine the relationship of the pertinent actors, *see Pepper*, 308 U.S. at 308, 60 S.Ct. at 246; *Securities & Exchange Commission v. Albert & Maguire Securities Co., Inc.*, 560 F.2d 569, 572 (3d Cir.1977); *In re Chi–Feng Huang*, 23 B.R. 798, 803 (Bankr. 9th Cir.1982)—is beside the point. Nevertheless, in conjunction with the foregoing, as defendant correctly argues, the bankruptcy court's fact-findings supporting its ultimate conclusions are subject to the "clearly erroneous standard of review," *Brunner v. New York Higher State Higher Education Services Corp.*, 831 F.2d 395, 396 (2d Cir.1987) (findings of fact, but not conclusions as to legal effect of those findings, are subject to the "clearly erroneous standard of review"); Fed.R.Bankr.R. 8013 (Supp.1989).

### A. Morrill claim

■ Plaintiffs contend that the bankruptcy court, in rejecting their objection to this claim, failed to apply controlling New York law regarding a corporation's ratification or adoption of an obligation incurred by one of its agents or officers. Although a bankruptcy court must apply federal and not State or local law in passing upon and rejecting or allowing claims made against the bankruptcy estate, *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 162–163, 67 S.Ct. 237, 239–240, 91 L.Ed. 162 (1946); *Heiser*, 327 U.S. at 732, 66 S.Ct. at 855–856, there must, nevertheless, be due regard for rights acquired by the claimants under State law and the validity of a creditor's claim against the bankrupt at the time the bankruptcy petition is filed is, in the absence of overruling federal law, determined by reference to State law, *id.* 329 U.S. at 161, 67 S.Ct. at 239. Therefore, the question presented is whether the $10,000 loan properly may be considered to have become

a debt of the debtor corporation such that Morrill has a valid claim against the debtor's bankruptcy estate under State law. *See In re Entz–White Lumber and Supply, Inc.*, 850 F.2d 1338, 1343–1345 (9th Cir.1988) (applying Arizona law to determine whether the debtor corporation guaranteed personal loans made to one of its officers and directors). If, under State law, Northway Agencies, Inc. can be deemed to have assumed Grogan's personal obligation under the loan made by Constance Morrill, the question then for the bankruptcy court would have been whether, under federal law and in the exercise of its equitable powers, the claim should be allowed or disallowed. Application of New York law indicates to the court that plaintiffs' objection to the Morrill claim should have been sustained.

■ As an initial matter the court notes that the parties, even after being directed to submit additional briefing, have erroneously viewed the first issue as one involving ratification of an unauthorized contract. Rather than presenting an issue involving ratification, which is the express or implied adoption of the acts of another by one for whom the other assumes to be acting, but without authority, *see Holm v. C.M.P. Sheet Metal, Inc.*, 89 A.D.2d 229, 455 N.Y.S.2d 429, 432 (4th Dep't 1982), the parties' dispute presents an issue concerning corporate assumption or adoption of a debt incurred by a corporate officer in his personal or individual capacity. In the court's view, the single interest payment made by the debtor corporation on a corporate check signed by Grogan himself (an assertion which defendant-appellee does not dispute), the absence of any finding that the debtor corporation used the funds deposited in its account for corporate purposes, and the failure of the corporation to adopt any corporate resolution regarding the personal obligation of Grogan leads the court to conclude that the debtor corporation did not assume or adopt Grogan's personal debt to Constance Morrill and, hence, is not jointly liable for that debt.

There is no doubt that a corporate officer, without express authority, has no pow-

er, implied or apparent, to apply corporate funds to the discharge of his personal indebtedness, *see Quintal v. Kellner*, 264 N.Y. 32, 35, 189 N.E. 770 (1934), and the mere payment of an officer's personal debt by the corporation on a corporate check is insufficient to render that debt an obligation of the corporation, *see Reif v. Equitable Life Assurance Society*, 268 N.Y. 269, 273–274, 197 N.E. 278 (1935); *see also Ward v. City Trust Co.*, 192 N.Y. 61, 71–73, 84 N.E. 585 (1908). Something more is needed. For example, had there been a course of conduct, not objected to by the corporation, evidencing prior similar acts by the corporate officer (i.e., paying his personal debt with corporate funds), *see Reif,* 268 N.Y. at 274–275, 197 N.E. 278, or, perhaps, had the corporation made regular use for corporate purposes of funds from the personal loan which had been credited to its account, *cf. Manufacturers Hanover Trust Company v. Sumande Shipping Corp.,* 48 A.D.2d 775, 369 N.Y.S.2d 135, 135–136 (1st Dep't 1975), *aff'd on the memorandum below,* 39 N.Y.2d 860, 386 N.Y.S.2d 215, 352 N.E.2d 133 (1976); *Bank of North America v. Shapiro,* 31 A.D.2d 465, 298 N.Y.S.2d 399, 401 (1st Dep't 1969), the corporation could be deemed to have adopted or assumed the personal obligation incurred by one of its officers. Such is not the case here. The court concludes, therefore, that Northway Agencies, Inc. cannot be deemed to have adopted or assumed Grogan's personal obligation as a matter of controlling New York law.

### B. King claim

At issue with respect to this claim, that is, the $50,000 settlement of the State court action, the obligation for which became an obligation of the debtor corporation upon amendment of the debtor's Chapter 11 plan, is the propriety of the amount of the settlement. Plaintiffs, then, do not contest the allowability of the claim.

Plaintiffs predicate their challenge on the "audit" conducted at the direction of the debtor corporation which revealed that the debtor actually owed some $16,028 to the Kings under the stock purchase agreement.

As noted, the bankruptcy court discounted the significance of this audit, which apparently only focused on whether Progressive Coverage correctly listed its accounts receivable, primarily because the audit failed to review the entire financial statement of Progressive and, hence, the overall damage to the debtor allegedly resulting from the overstatement of receivables, even assuming that the overstatement would warrant a reduction in the debtor's obligation to the Kings, could not be properly assessed. All in all, in the court's view, the bankruptcy court's determination that the proposed payment of $50,000 to the Kings in complete satisfaction of the amounts owed to them was "fair and reasonable" should not be disturbed. It cannot be said that, under the "clearly erroneous standard of review," the court is "left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, North Carolina,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

### Conclusion

For the foregoing reasons, the order of the bankruptcy court is reversed in part and affirmed in part.

IT IS SO ORDERED.