ROSE KINSTLINGER et al., Copartners Doing Business under the Name of TRANS PRODUCTS COMPANY, Respondents, *v.* MANUFACTURERS TRUST COMPANY, Defendant, and PUBLIC NATIONAL BANK AND TRUST COMPANY OF NEW YORK, Appellant.

First Department, November 25, 1952.

*Sam L. Cohen* of counsel (*Lyonel E. Zunz* with him on the brief; *Moses & Singer,* attorneys), for appellant.

*Nathan Urdang* for respondents.

BREITEL, J. This is an appeal from an order denying defendant Public Bank's motion to dismiss plaintiffs' fourth cause of action for legal insufficiency. The question in the case is the scope of liability of a collecting bank to the creditors of a corporation for diverted corporate checks. The checks were drawn on another bank but deposited for collection with Public Bank by a partnership, the several partners of which were the officers and directors of the payee corporation.

Plaintiffs purchased certain sales accounts from the All State Sales Co., Inc. Fraud, which we shall accept as such from the allegations, was practiced in the sale of the accounts. Plaintiffs, in purchasing the accounts gave some sixteen checks aggregating $21,406.09, over a period from December 31, 1948 to July 21, 1949. The checks were payable to the All State corporation and were drawn on the Manufacturers Trust Company. The checks, it is alleged, were " without a proper indorsement from the corporate payee in that some did not bear any indorsement

whatsoever and some others were indorsed improperly and without authority ", and were deposited with Public Bank in an account maintained by the All State Sales Company, a partnership. Public Bank collected these checks from the drawee bank. While it is not alleged, in order to dispose of the issues, it will be assumed that the identity of the partners in the All State partnership with the officers and directors of the All State corporation is set forth in the pleading. The complaint goes on to allege that pursuant to the fraudulent conspiracy among the All State people the corporate funds were thus diverted to the partnership and then to the individual use and benefit of the individuals, thereby rendering the All State corporation insolvent. Plaintiffs claim to sue as creditors of the now insolvent corporation.

Plaintiffs, relying on the leading case of *Ward* v. *City Trust Co.* (192 N. Y. 61) and section 95 of the Negotiable Instruments Law, seek to hold defendant Public Bank liable for the diversion of the sixteen checks on the ground that the bank had notice that checks payable to the corporation were being deposited in the partnership account, and that the defective or omitted indorsements required Public Bank to make further inquiry.

There are certain significant negative facts. The All State corporation had no account with Public Bank. There is nothing in the pleading indicating that Public Bank knew or had the opportunity of knowing who were the officers and directors of the payee corporation. Hence, Public Bank was in no position to know whether the All State corporation and the All State partnership had any identity of personnel. The complaint alleges that Public Bank had " notice and knowledge of the aforesaid fraudulent misrepresentations and conspiracy, practiced by the said All State Sales Co., Inc., its officers and agents on the plaintiffs in the course of the procurement of said 16 checks ". It appears from the briefs submitted by plaintiffs and by concession on the argument that this allegation of notice and knowledge relates to no more than to the defective or omitted indorsements by the All State corporation on the sixteen checks. In other words, it was and is conceded by plaintiffs that Public Bank had no actual knowledge of the fraud and conspiracy, and of course, that plaintiffs cannot prove actual knowledge, and did not intend by their pleading to claim so. Again, in order to dispose of the issues, the allegation will be read as limited by the concession in open court.

Returning to the basic question, upon these facts may liability be fastened upon defendant Public Bank? The *Ward* case

(192 N. Y. 61, *supra*) and section 95 of the Negotiable Instruments Law, as indicated earlier, are relied upon by plaintiffs.

The *Ward* case involved checks payable to a corporation, indorsed by corporate officers, and paid to defendant trust company in discharge of a personal loan. The trust company was held liable, at the suit of creditors of the corporation. It was held that the trust company was put on notice by the fact that a large portion of the corporate assets were being paid out for the benefit of individual officers; that it knew that the officers were the sole stockholders of the corporation; and that the trust company had representation on the board of directors of the corporation. Being on notice, inquiry would have shown that the officers did not have authority to make the payments. It is not unimportant that such inquiry would have been revealing because the trust company was represented on the board of directors of the corporation.

In this case Public Bank is merely the collecting bank. Whatever its knowledge of the All State partnership, it knew nothing of the All State corporation, except presumably the fact of existence, the similarity of name, and the further fact of some relationship. The sixteen checks were spread over a period of many months. They ranged in amounts from as little as $558.50 to as much as $2,721.48. There was no reason from these facts to assume anything other than business exchanges of some unexplained but probably innocent sort between the All State corporation and the All State partnership. Thus, the court in the *Ward* case (192 N. Y. 61, 72, *supra*) wrote to the effect that: " If the check had been regular on its face, that is, if it appeared to have passed through the hands of the Hartman Company, and thence into the channels of commerce, as in a case relied upon by the respondent, then, even if offered in payment of his personal debt by one of the officers of the company, the taker without notice would have the right to assume that the relations of the various parties to the paper were what they appeared to be."

Section 95 of the Negotiable Instruments Law imposes no greater responsibility on a bank. It provides that " To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or *knowledge of such facts that his action in taking the instrument amounted to bad faith* * * *." (Emphasis supplied.)

The balance of the section then provides an exculpation of banks if a corporate resolution has been filed authorizing payments by corporate instrument to individual officers. In the first place, the Public Bank is not relying on the exculpation provision. Secondly, it makes little sense to speak of a corporate resolution filed by the payee of a check in relation to a bank which is merely the collecting agent and not the depositary for the corporation. The statute, in the context of this particular case, establishes no greater duty of inquiry than the rule in the *Ward* case.

Plaintiffs, of course, point to the allegation of improper or absent indorsement on the sixteen checks as sufficient to fix liability on Public Bank by putting it on notice. The answer in the first instance is that Public Bank did not pay out the money on these checks; it was but the collecting agent. Assuming, however, that the defective or omitted indorsements were sufficient to put Public Bank on some kind of notice, what might Public Bank have accomplished by way of inquiry? Had it called the defective or omitted indorsements to the attention of the All State partnership, the personnel being the same as the All State corporation, as plaintiffs tell us, the indorsements would have been easily and speedily corrected or supplied. And nothing of the underlying fraud and conspiracy would have risen to the surface. As stated by Judge LOUGHRAN (now Chief Judge) for the Court of Appeals in another case refusing to apply the rule of the *Ward* case: "Every fact that reasonable inquiry could have made known would have countenanced an honest belief that the checks were issued without abuse of authority." (*Reif* v. *Equitable Life Assur. Soc.*, 268 N. Y. 269, 277.) In that case corporate checks were used over a period of years to pay premiums on the personal life insurance of one of the officers. The insurance company was being sued by the trustee in bankruptcy of the corporation for return of the premiums paid. With the drawee bank there was filed a corporate resolution authorizing payments to the individual account of the officers. The court pointed out that inquiry at the bank would have disclosed the resolution, and that such finding would not have advanced the insurance company's knowledge of the impropriety of the payments. Thus too, in the *Ward* case, the court stressed what would have been learned upon inquiry, diligently and honestly made. "That inquiry, honestly and diligently made, would have shown that the Hartman Company was insolvent, or would become so by the with-

drawal of so large a part of its capital as the check represented.'' (192 N. Y. 61, 75.)

In other words, the duty to inquire, breached, will create liability, if inquiry could have revealed what would have deterred the inquirer from doing what he did or from omitting what he failed to do. There is nothing in the pleading suggesting that if Public Bank had inquired, because of the defective indorsements, it would have ascertained anything pertinent to the fraud or conspiracy. There must be some relation between that circumstance which puts one on notice and the facts which, if discovered, would have fixed liability if disregarded. Put another way, the defective indorsements had nothing to do with the fraud or conspiracy. They were, so far as plaintiffs' claims are concerned, an irrelevant irregularity.

The preceding analysis but formulates a practical and reasonable result. The effect in banking and commercial practice of a rule that would place liability on a collecting bank in circumstances as alleged here would be destructive and an unjustified impediment to the flow of commerce. No taint of immorality, of negligence, or breach of contractual relation toward the drawers of these checks by the bank is or can be claimed. A collecting bank that sought to stir up the inquiry that plaintiffs would require this bank to have undertaken would be a nuisance to parties engaged in commerce. Many are the affiliated enterprises, corporate and noncorporate, that engage in specialized and exchange transactions among themselves, in connection with their trade with '' outsiders ''. There was nothing in this case, insofar as the bank was concerned, to indicate that the transactions between the All State corporation and the All State partnership were not of that character and quite regular in purpose and effect. Something more than an irrelevant technical defect in indorsements of negotiable instruments is required before a mere collecting bank should halt in the performance of its duty of collection and demand explanation of the transaction for which it is but a conduit of the commercial paper issued in the financing of the transaction.

Accordingly, the order of Special Term insofar as it denied defendant Public Bank's motion to dismiss the fourth cause of action should be reversed, with $20 costs and disbursements to appellant, and the motion should be granted.

DORE, J. P. (dissenting in part). As plaintiff concedes that the fourth cause of action should be amended, I concur that the order appealed from should be reversed but I dissent from the

holding that the fourth cause of action should be dismissed and vote to grant plaintiff the right to replead; the sufficiency of the cause of action as repleaded may then be considered.

COHN, CALLAHAN and VAN VOORHIS, JJ., concur with BREITEL, J.; DORE, J. P., dissents in part, in opinion.

Order, insofar as it denied defendant Public Bank's motion to dismiss the fourth cause of action, reversed, with $20 costs and disbursements to the appellant and the motion granted. Settle order on notice.