COMMERCIAL TRADING COMPANY, Respondent, *v.* TRADE BANK AND TRUST COMPANY, Appellant and Third-Party Plaintiff-Respondent. FEDERAL RESERVE BANK OF NEW YORK, Third-Party Defendant-Appellant.

First Department, November 29, 1955.

*Peter Gettinger* of counsel (*Gettinger & Gettinger,* attorneys), for appellant and third-party plaintiff-respondent.

*David S. Konheim* of counsel (*John J. O'Connor,* attorney), for third-party defendant-appellant.

*Sydney Krause* of counsel (*Bernard Wexler* with him on the brief; *Krause, Hirsch, Levin & Heilpern,* attorneys), for respondent.

BREITEL, J. P. This is an action on three checks by the drawer against the drawee bank, for payments made on the checks and charged to the drawer's account. The drawer contends that the payments and charges were improperly made because the named payee, a corporation, never properly indorsed the checks, and the proceeds were diverted by an officer of the payee.

After a nonjury trial, judgment was rendered in favor of the plaintiff drawer. Defendant, the drawee bank, appeals. The third-party defendant, an intermediate collecting bank impleaded by the drawee bank, in turn appeals from the judgment over in favor of the drawee bank.

The case involves two questions. The first is the nature and extent of liability of the intermediate collecting bank and that of the drawee bank. The next question is whether the drawer of a check may recover from the drawee bank on a claim of payment with notice of possible wrongful diversion of the check or its proceeds, without proving the actual diversion to its detriment.

At the trial, the evidence established that plaintiff, Commercial Trading Co., in a loan transaction, drew three checks on defendant bank, payable to the Kelly Rubber Company, the borrower. One W. F. Kelly, president and general manager of the payee, then indorsed two of the checks '' The Kelly Rubber Co. per W. F. Kelly,'' followed by '' W. F. Kelly,'' individually, and deposited them in his personal account with the State Bank Company of Massillon, Ohio, which bank was also the depositary for the Kelly Rubber Company. The same course was followed with respect to the third check, except that it contained the word '' Pres.'' following the clause '' per W. F. Kelly.'' The State Bank Company then indorsed the checks and had them forwarded to the Federal Reserve Bank, the third-party defendant, for collection in New York. Subsequently, they were presented and paid by defendant, the drawee bank.

Plaintiff, apparently after it did not receive payment of its loan (evidenced by the checks) from the Kelly Rubber Company, instituted an action in Ohio against the rubber company and W. F. Kelly. The record, however, does not indicate the basis of the action. All that was put in evidence was an Ohio judgment in favor of plaintiff against W. F. Kelly and dismissing the complaint against the Kelly Rubber Company.

Plaintiff then instituted this action to recover the face amount of the checks less the sum paid by W. F. Kelly, alleging payment by defendant drawee bank with notice of the '' unauthorized and forged '' indorsements of W. F. Kelly. The drawee bank then impleaded the Federal Reserve Bank, the intermediate collecting bank. The plaintiff drawer recovered judgment against the drawee bank and the latter recovered judgment on its claim over against the intermediate collecting bank. These judgments should be reversed, for the reasons to be discussed. But, a new trial is required, because there is some indication that W. F.

Kelly may have, in fact, wrongfully diverted the checks to plaintiff drawer's detriment and if that be established, since the drawee bank had notice of such possible diversion, its liability can be fixed.

Initially it must be noted that the record did not disclose what the Ohio law is with respect to the liability of the State Bank Company in Massillon, nor have counsel briefed the issues that would arise therefrom. Indeed, this record does not reveal why plaintiff Commercial Trading Company, the drawer, has been or is unable to assert its claim for the balance of the loan that it made to the Kelly Rubber Company. We can only surmise that the Kelly Rubber Company has successfully disputed or can successfully dispute that the loan was in fact made to the Kelly Rubber Company. But, on the other hand, it then becomes difficult to understand how the Commercial Trading Company, the plaintiff here, was able to recover part payment of the loan, as is alleged in the complaint.

The foregoing considerations may be important in determining the nature and extent of the liability of the intermediate collecting bank, the Federal Reserve Bank. These are material, too, in determining the nature and extent of liability of the Trade Bank and Trust Company in New York, the drawee bank. Assuming that notice and the obligation which might flow from such notice of possible diversion would not be imposed on the Ohio bank under Ohio law, it does not necessarily follow that the drawee bank would be exculpated. The drawee bank was authorized to make payments chargeable to the drawer's account only upon checks which were issued and indorsed in accordance with the instructions of the drawer. Under the New York rule and section 95 of the Negotiable Instruments Law, a bank is not protected merely because an indorsement is not condemnable as forged or unauthorized under section 42, thus preventing the passage of title. Even if an indorsement is sufficient to pass title, if the bank knows of extrinsic facts or is put on notice, by reason of individual indorsement by a corporate officer and deposit to his personal account of a corporate instrument, that there has been a diversion, the bank may be liable. (Negotiable Instruments Law, §§ 94, 95.) That stems from the nature of the contract between the drawer and the drawee. If the drawer's check is presented to the drawee bank with indorsements or lack of indorsements which are sufficient under New York law to give notice of diversion, and as a consequence of which the drawer suffers a loss, the drawee bank may be liable.

The first question then which should be considered is whether the checks presented at the drawee bank for payment were in such form as to give notice of possible diversion and, therefore, possible loss to the drawer in pursuing its claim, if any, against the Kelly Rubber Company.

As pointed out earlier, if the payee's indorsement was forged or the indorsement was made wholly without authority of the payee, then, under section 42 of the Negotiable Instruments Law, the indorsement is ineffective to pass title. A drawee bank which pays on such an instrument bearing such an indorsement is liable to the drawer. (*Shipman* v. *Bank of State of N. Y.*, 126 N. Y. 318.) But, in the instant case, there is no question of a forged or unauthorized indorsement. W. F. Kelly clearly had authority to indorse the payee corporation's name to the checks in the form in which he did. Nor is it disputed by the parties that W. F. Kelly had such authority. But, although W. F. Kelly, as president, had sufficient authority to pass title to the instrument, he did not, in absence of evidence to that effect, have authority to appropriate the check or its proceeds for his own purposes. (*Wagner Trading Co.* v. *Battery Park Nat. Bank*, 228 N. Y. 37; *Campbell Trucking Corp.* v. *Public Nat. Bank & Trust Co.*, 201 Misc. 745.) Accordingly, a bank which accepts a check payable to a corporation indorsed by the president of the corporation, in the corporate name, and deposited in his personal account, is on notice of a possible misappropriation of the proceeds. (*Wagner Trading Co.* v. *Battery Park Nat. Bank, supra.*)

Thus, the drawee bank, the Trade Bank and Trust Company in New York, under the circumstances of this case, had notice of a possible diversion. This notice arose from two facts. The first was that the corporate indorsement was immediately followed by an individual indorsement. Secondly, the individual indorsement, by reason of the bank stamps, suggested deposit to, or cashing for the personal account of the individual officer. Under these circumstances the drawee was put to inquiry. (*Epstein* v. *Chatham Phenix Nat. Bank & Trust Co.*, 138 Misc. 765.)

Assuming, as we may, — inasmuch as there was no proof to the contrary — namely, that the Ohio law is the same as New York, then under the facts thus far established in this case, it would be clear that the State Bank Company in Ohio, when it accepted the checks deposited by W. F. Kelly, did so at the peril that he, as corporate officer, was diverting the proceeds

thereof.* The same may be true with respect to the Federal Reserve Bank, the collecting bank and third-party defendant herein, and the defendant drawee bank. To the collecting and drawee banks, it was evident from the back of the checks that W. F. Kelly had deposited or cashed the checks for his personal account with the State Bank Company in Ohio. They, too, therefore, had such notice as should have led them to inquire into the authority of W. F. Kelly to use the checks for his own purposes. Concomitantly, they are bound by whatever facts such inquiry would have produced. (*Munn* v. *Boasberg,* 292 N. Y. 5, 9; *Reif* v. *Equitable Life Assur. Soc.,* 268 N. Y. 269, 273; *Kinstlinger* v. *Manufacturers Trust Co.,* 280 App. Div. 729.)

It is contended by the banks, however, that the rule of *Harry M. Lasker, Inc.,* v. *Mutual Bank of Roseville* (194 N. Y. S. 379, affd. 201 App. Div. 333, affd. 234 N. Y. 550) requires their absolution from liability. The *Lasker* case is inapplicable. In the *Lasker* case the check made payable to the corporation was first indorsed in the name of the corporation, by two officers thereof. These two officers then individually indorsed the check. Subsequent to these indorsements there appeared the signature of another individual and still further indorsements showing collection of the check by the defendant bank. It was claimed by the plaintiff drawer that these indorsements indicated possible diversion of the check by the corporate officers. It was held, however, that the individual signatures of the officers following the corporate indorsement did not give notice that the officers had individually obtained the proceeds of the check, rather than had used them for corporate business purposes. This was so, as noted by the court, because " Corporate obligations frequently bear the personal indorsements of its officers, in order to give the instrument greater credit ". (*Harry M. Lasker, Inc.,* v. *Mutual Bank of Roseville* (194 N. Y. S. 379, 380, *supra.*) Thus, in the situation where the individual indorsements are merely stages in a transfer of the instrument, and not for the purpose of deposit to or cashing for the personal

---

* While a corporate resolution was on file with the State Bank Company, one which in proper circumstances would in New York absolve a bank from liability on corporate instruments payable to a corporate officer under the exception contained in section 95 of the New York Negotiable Instruments Law, the resolution does not avail in this case. The resolution filed did not authorize the corporate officer to indorse individually or deposit to his own account checks payable to the corporation, as distinguished from checks drawn by the corporation on its own depositary. In this respect the holding of Trial Term was unexceptionable.

account of the officer, there may be an absence of notice of possible diversion. So, at most, the *Lasker* case seems to hold.

But, this is not the situation here, for it was evident that the checks in question were deposited in the State Bank Company in Ohio to the personal account of W. F. Kelly, or at least cashed for his personal account. Under these circumstances, the Ohio bank had notice and it cannot be said that the drawee and collecting banks were not put to inquiry. (*Epstein* v. *Chatham Phenix Nat. Bank & Trust Co.*, 138 Misc. 765, *supra.*)

But, to establish a taking of the checks in bad faith (Negotiable Instruments Law, § 95) and fasten liability by reason of notice thereof on either the drawee or collecting bank, it was still incumbent upon the drawer to establish a loss, namely, that in fact the proceeds were diverted by W. F. Kelly so as to prevent it from collecting its loan from the Kelly Rubber Company. Under the Negotiable Instruments Law notice of a defect is insufficient to hold a bank liable, unless in fact the defect, that is, the prior negotiation of the check in bad faith, is established. (*Kinstlinger* v. *Manufacturers Trust Co., supra;* cf. *Munn* v. *Boasberg, supra,* and *Reif* v. *Equitable Life Assur. Soc., supra.*)

It is argued by the drawer, however, that the fact of diversion was established. But, this is not so. The Ohio judgment, in absence of more evidence than its mere recital of liability of W. F. Kelly and nonliability of the Kelly Rubber Company, does not establish diversion. Nor, does the evidence that the Kelly Rubber Company did not pay its loan. The drawer must prove that W. F. Kelly diverted the checks, or their proceeds, so as to prevent it from collecting its loan from the Kelly Rubber Company. Otherwise it sustained no loss.

Accordingly, since it was established that the indorsements on the checks were sufficient to give the drawee and perhaps the collecting banks notice of a possible diversion by W. F. Kelly, a new trial should be had at which plaintiff drawer will be obliged to establish in fact, that diversion to its detriment, rather than that of the Kelly Rubber Company, took place. If this is established, then the liability of one or more of the banks will have been made out.

The judgment should be reversed and a new trial ordered, with costs to the appellants to abide the event.

BASTOW, BOTEIN, RABIN and BERGAN, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellants to abide the event.