In the Matter of the General Assignment for the Benefit of Creditors of Towns Paint Co., Inc.

The Marine Trust Company of Buffalo, Petitioner.

County Court, Erie County, November 4, 1942.

*William R. Emblidge* for The Marine Trust Company of Buffalo, petitioner.

*A. Howard Aaron* for assignee.

WARD, J. This is a motion by The Marine Trust Company of Buffalo that petitions this court " for an order directing the assignee herein to deliver to The Marine Trust Company of Buffalo the sum of $532.72 heretofore collected by the assignee upon accounts receivable assigned to The Marine Trust Company of Buffalo to apply upon the obligations to it by the assignor all further sums received by the assignee or by The Marine Trust Company of Buffalo in payment of any accounts receivable assigned to The Marine Trust Company of Buffalo as collateral security."

The petition alleges that the petitioner, a domestic banking corporation, on January 30, 1940, contracted with the assignor for a series of loans " to be secured by the assignment of accounts receivable owing to the assignor by various customers;" that over the succeeding two and a half years, loans were made at an average of twice weekly with additional accounts receivable pledged as collateral security; that as the accounts receivable were paid, the proceeds were applied in reduction of the loans; that on the date of the assignment, five notes were outstanding in the total of $1,416.79, and the accounts receivable pledged as security amounted to $2,211.02; that on September 29, 1941, an unsecured loan of $450.00 was made, for which the assignor delivered his note due October 29, 1941; that on October 30, 1941, an additional loan of $550.00 was combined with the former into one note amounting to $1,000.00, due January 2, 1942; that certain other loans were made, so that at the present time the assignor is indebted to the petitioner in the sum of $522.53 on loans secured by accounts receivable and $1,720.45 on unsecured loans, totalling loans of $2,276.33; that the accounts receivable securing this indebtedness aggregate a face value of $1,051.46; that " the assignee has collected upon accounts receivable assigned to your petitioner the sum of $532.72 which is being held pending judicial determination of the rights of the respective parties thereto."

The contract between the petitioner and assignor dated January 30, 1940, contains a paragraph # 2 that states: " All accounts assigned to the Company (the petitioner) as such

security shall be held by the Company as security for all sums payable under said note and all other present and future demands against the undersigned (the assignor), created directly or acquired by assignment, absolute or contingent, due or not due, which the Company has or shall have, including, particularly, demands under any endorsement or guaranty made by the undersigned and whether or not the loan made at the time of the execution and delivery of the assignment shall have been paid.''

No answering affidavits have been produced and, therefore, all of these facts may be taken as true.

At common law and in the absence of statutory prohibition an insolvent person has the right to prefer one creditor over others.

Section 23 of the Debtor and Creditor Law (derived from L. 1887, ch. 503), provides: '' In all general assignments of the estates of debtors for the benefit of creditors any preference created therein, other than for the wages or salaries of employees under the last section, shall not be valid except to the amount of one-third in value of the assigned estate left after deducting such wages or salaries, and the costs and expenses of executing such trust; and should said one-third of the assets of the assignor or assignors be insufficient to pay in full the preferred claims to which, under the provisions of this section, the same are applicable, then said assets shall be applied to the payment of the same pro rata to the amount of each of said preferred claims.''

It will be observed that the statute relates only to general assignments for the benefit of creditors and to preferences created therein, and does not, in so many words, relate to any other transfers or transactions. Thus, it would seem that the statute has no application to transfers or preferences made independent of the assignment. Nevertheless, the reported cases in this State have given the statute a broader meaning.

In *Shotwell* v. *Dixon* (163 N. Y. 43), MARTIN, J., speaking for the court, said (pp. 50, 51): '' Thus we find it firmly established by the decisions of this court that the statute of 1887 applies to other transfers where there is a subsequent general assignment, and the evidence shows that they were made in contemplation thereof and with the intent of avoiding the statute, provided it is proved that the creditors had knowledge of such intent and purpose on the part of their transferrer. But it is equally clear under the decisions as they now stand that previous transfers to creditors to pay their honest claims cannot be avoided or be

held to fall within the statute unless the evidence fairly shows a knowledge on their part that an assignment is contemplated and that the purpose of such transfers is to give a preference in excess of one-third of the estate.''

In this case, since the contract between the creditor and the assignor was made January 30, 1940, and since this contract was intended to cover present and future loans made by the creditor to the assignor, it is difficult, if not impossible, to ascertain an intent of avoiding the statute upon the part of either, nor is there a showing that the creditor had knowledge of such intent on the part of the assignor. This is especially true since the date of the assignment is June 17, 1942. The fact that additional loans were made by the creditor to the assignor, one of which was originally due and payable on March 13, 1942, and another due and payable January 2, 1942, both of which were renewed monthly until the very month in which the general assignment was executed, does not of itself demonstrate fraud or intent to avoid the statute.

The right of a failing debtor to prefer one creditor over another in the distribution of his estate, while it has been often regretted, has been repeatedly recognized by the courts of this State in the absence of a statute to the contrary. This right is possessed by a corporation as well as by an individual person. A corporation may transfer its property although it amounts to a preference unless restrained by its certificate of incorporation or by statute. Preferences by insolvent corporations are expressly prohibited by section 15 of the Stock Corporation Law. (L. 1940, ch. 265, eff. April 8, 1940.) This section provides, in part: '' No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid, except as to any rights or interests which may be acquired thereunder by any person without notice or reasonable cause to believe that such conveyance, assignment, transfer, payment, judgment, lien or security would effect a preference, and except also that laborers' wages for services shall be preferred claims and be entitled to payment before any other creditors out of the corporation assets in excess of prior liens or incumbrances.'' (This quotation is the same as contained in L. 1929, ch. 653, eff. April 15, 1929.)

In this case, even though it might be found that insolvency was imminent at the time of the loans, or some of them, or at the time of some of the extensions of the maturity date of such loans, nevertheless there is no evidence of an intention of giving a preference and there is no evidence that the recipient had notice or reasonable cause to believe that a preference was thereby effected in its favor.

The mere fact that a corporation, being indebted to a bank which refuses to make further loans unless new collateral security is provided for the existing debt and the new loan, contracts to transfer certain collateral security accordingly, and after such new loan is received, transfers the collateral at a time when it may be insolvent and during the same month in which it is placed in the hands of a receiver, does not render such a contract invalid and it is not prohibited by section 15 of the Stock Corporation Law. (*Matter of Rogers Construction Co.,* 79 App. Div. 419, affd. 175 N. Y. 509.) It goes without saying that solvency is presumed until the contrary is shown. (*O'Conner* v. *Gifford,* 117 N. Y. 275.)

Here, the corporate debtor entered into a contract with the bank almost two and one-half years before it executed a general assignment for the benefit of creditors. In the absence of logically probative evidence to the contrary, it is impossible to presume that the corporation was insolvent until the date of its actual general assignment, namely, June 17, 1942. There is no evidence of insolvency in any of the documents now before this court.

In view of the foregoing, this court is unable to find that the transfer of collateral security by the corporate debtor violated section 276 of the Debtor and Creditor Law. Although the transactions were preferential in nature, they were certainly not fraudulent. (*Van Schaick* v. *Title Guarantee & Trust Co.,* 252 App. Div. 188.)

Generally, a security for one debt cannot be applied to another (*C. N. Bank* v. *Bell,* 125 N. Y. 38), and upon the debt's being discharged, the pledgee's interest in security is terminated (*Cass* v. *Higenbotam,* 100 N. Y. 248.) Nevertheless, where the terms of the agreement, under which certain collateral security is received may authorize it to be held for the satisfaction of all debts, both past and future, against the pledgor, and if such agreement so provides, it may be applied to the payment of any such debt. (*Mechanics & Traders' Bank* v. *Livingston,* 6 Misc. 81, and see cases cited therein.)

In this case, the agreement between the pledgee and pledgor clearly provided for the application of collateral security to the satisfaction of all " present and future demands " against the pledgor. Persons who are not shown to be incompetent in any way may properly contract so as to guide their behavior with one another in the future and legally protect each other in so doing in accordance with the terms of such contract, provided that no express law is violated thereby. Upon a careful scrutiny of the contract between the parties hereto, as it affects the facts of this case, no violation of any laws has' been discovered, and therefore, it should be enforced.

Motion is granted. Prepare and submit order accordingly.