Douglas TROLL, as Receiver of Eastern Insurance Company, Plaintiff-Appellant,

v.

The CHASE NATIONAL BANK OF CITY OF NEW YORK, Defendant-Appellee,

and

Jack Ackerman et al., Defendants.

No. 194, Docket 24847.

United States Court of Appeals Second Circuit.

Argued March 5, 1958.

Decided July 24, 1958.

Milton Pollack, New York City (Samuel N. Greenspoon and Francis E. Koch, New York City on the brief), for plaintiff-appellant.

A. Donald MacKinnon, New York City (Edward J. Reilly, Jr. and Milbank, Tweed, Hope & Hadley, New York City, on the brief), for defendant-appellee.

Before LUMBARD, WATERMAN and MOORE, Circuit Judges.

LUMBARD, Circuit Judge.

This is an appeal from a judgment of the District Court for the Southern District of New York, entered after a trial before Judge Ryan sitting without a jury, dismissing the complaint and granting judgment for the defendant.

The plaintiff is a receiver appointed by the Chancery Court of Delaware in an action brought by the Attorney General of Delaware for the liquidation of the Eastern Insurance Company. After qualifying, the receiver was expressly authorized on March 3, 1954, by the Delaware Court to bring this action. The defendant was, at the times com-

plained of, a national bank, but on March 31, 1955 it merged with the Bank of Manhattan Company and became The Chase Manhattan Bank, a New York corporation. Jurisdiction of the federal courts was invoked by reason of diverse citizenship.

By this action the plaintiff seeks to recover certain bonds which Eastern put up as collateral for two loans extended by the Chase bank. Two theories of recovery are advanced by the plaintiff, (1) that the bank converted the bonds, and (2) that the pledge constituted a voidable fraudulent conveyance under New York Debtor and Creditor Law, McKinney's Consol.Laws, c. 12, § 270 et seq.

On January 10, 1951, Eastern, which had not previously done business with Chase, opened a deposit account with Chase with an initial deposit of $290,-308.34. Copies of corporate resolutions in the usual form designating the officers authorized to make withdrawals and loans on Eastern's behalf were filed with Chase on January 12, 1951. Thereafter the bank received for Eastern, United States Treasury Bonds in face amount of $275,000 against payment out of the insurance company's account. The bonds were held in a "safekeeping" or custodian account.

In the early part of March 1951, Chase was approached by Joseph N. Boland, the accountant for Eastern, to ascertain whether the Chase bank would loan money to Eastern, assertedly for funds needed in its business. Eastern then applied for a loan of $490,000 and as security proffered $500,000 face amount New York City Housing Authority 2% Bonds (due from 1998 to 2001) and the $275,-000 face amount United States Treasury Bonds previously deposited in the custodian account. The loan application was approved and Eastern then delivered to Chase a duly executed demand note for $490,000 together with authorizing corporate resolutions. Chase paid the $490,-000 to a stockbroker for the $500,000 New York City Housing Authority Bonds which Chase then retained.

On May 24, 1951 Eastern borrowed an additional $50,000 from Chase and executed a new demand note for $540,000 the total then owed.

Following this, on July 16, 1951, Eastern borrowed an additional $100,000 from Chase and executed a separate demand note and deposited with Chase on July 26 additional collateral of $100,000 Port Authority Bonds and $100,000 New York City Housing Authority 2¼% Bonds, due in 1996. This collateral by the terms of the note was to stand as security for the payment of "* * * this note and of all other liabilities" of Eastern. The term "liabilities" was thereafter defined as including "any and all indebtedness, notes * * * and liabilities of any kind * * * now or hereafter existing * * * and whether heretofore or hereafter incurred."

On July 26, 1951 Eastern instructed Chase to sell the $100,000 Port Authority Bonds and apply the proceeds in payment of the July 16, 1951 note for $100,-000. This was done and the loan was paid in full. Chase continued to hold the remaining collateral, the $100,000 Housing Authority Bonds, as security for the May 24 loan, which at the time of trial remained unpaid to the extent of $412,123.91. The application of the $100,000 Housing Authority Bonds to the collateral pledged for repayment of the May note was pursuant to the express contract provision noted above and the definition of security in the May and July notes. The term "security" was therein defined to include any property owned by Eastern "which [has] been or at any time shall be delivered to or otherwise come into the possession * * * of the Bank."

Although in the district court the plaintiff attempted to secure the return both of the Treasury Bonds and the New York City Housing Authority Bonds, he has limited his claim on appeal to the question of the legality of Chase's retention of the $100,000 Housing Authority Bonds as collateral.

■ In attempting to make out a conversion the plaintiff advances the ingen-

ious argument that Eastern was insolvent when the bank retained the $100,000 Housing Authority Bonds as collateral for the May note after the July note was paid and that in so doing Chase unlawfully converted the bonds because the general property rights to them had passed to the creditors of insolvent Eastern under the New York "Trust Fund Doctrine." We cannot agree that there was an illegal conversion under such a doctrine or any other theory.

■ While the exact meaning and limits of the New York "trust fund" doctrine are unclear, the doctrine has never been applied against a good faith purchaser for value. Cf. Barr & Creelman Mill & Plumbing Supply Co. v. Zoller, 2 Cir., 1940, 109 F.2d 924; Reif v. Equitable Life Assurance Society, 1935, 268 N.Y. 269, 276, 197 N.E. 278, 100 A.L.R. 55. The theory that the assets of a corporation constitute a "trust fund" for its creditors on insolvency has been used in actions brought against directors of the insolvent corporation [e. g. New York Credit Men's Adjustment Bureau v. Weiss, 1953, 305 N.Y. 1, 110 N.E.2d 397; New York Stock Corporation Law, McKinney's Consol.Laws, c. 59, §§ 15, 60]; stockholders who diverted corporate funds [e. g. Trotter v. Lisman, 1913, 209 N.Y. 174, 102 N.E. 575; New York Stock Corporation Law, § 15] and third parties who took a conveyance from an insolvent corporation with knowledge of the insolvency [e. g. Ward v. City Trust Co., 1908, 192 N.Y. 61, 84 N.E. 585; Stefanzyn v. Brooklyn Nat. Bank of New York, 1st Dept. 1937, 251 App.Div. 259, 296 N.Y.S. 160; New York Stock Corporation Law, § 15].

It is clear, however, that the trust fund doctrine has no application to a transferee who takes in good faith and for value. Cole v. Millerton Iron Co., 1892, 133 N.Y. 164, 168, 30 N.E. 847; Reif v. Equitable Life Assurance So-

ciety, supra; Barr & Creelman Mill & Plumbing Supply Co. v. Zoller, supra.

The crucial issues,[1] therefore, determinative of both of the theories of recovery advanced by the plaintiff, are whether Chase was acting in good faith and whether value was given by the bank.

It is clear that Chase had no actual knowledge of any insolvency on the part of Eastern. Chase was acting under an express contract right in holding the security deposited for the payment of Eastern's indebtedness. See In Matter of Towns Paint Co., County Ct.1942, 179 Misc. 813, 817, 39 N.Y.S.2d 585; note 69 A.L.R. 912.

Nor did the facts put Chase on notice of Eastern's insolvency. We conclude that the finding of the district court that the facts did not disclose any "warning flag to put [Chase] on notice * * * [or] to cause a prudent and reliable lending institution to withhold extending credit" is clearly correct and indeed is the only permissible inference which could have been drawn from the facts.

■ There is no principle of law or logic which would require a commercial bank to investigate the books of a borrower who fully secures a loan. Absent circumstances which would place a bank on notice that a prospective borrower may in fact be insolvent, it would be an absurd restriction on the extension of credit and the banking business to expect a commercial bank to conduct such a preliminary examination of a borrower where the loan is to be amply secured.

And even had the bank made such an investigation, no showing has been made that it would have discovered any insolvency. Mr. Staubitzer, upon whose testimony the plaintiff sought to prove that the claims reserves kept by the insurance company were grossly insufficient, spent almost two months, as an expert on such matters, examining the records of the company and the individual files of a

1. It should be noted at this point that there was no finding by the district court that the Eastern Insurance Company was insolvent at any of the times complained of.

In any event, our disposition of the case makes it unnecessary to determine the admissibility or weight of the evidence offered to prove such insolvency.

few thousand cases. Even so, Mr. Staubitzer's testimony was but a *post hoc* expression of opinion based, by his own admission, on subsequent payment of claims and considered in the light of subsequent events.

We come, therefore, to the question of consideration. On July 16, 1951, the date on which the Housing Authority Bonds were delivered to the Chase bank by Eastern, it is clear that the additional loan of $100,000 was sufficient consideration for the deposit of the additional securities. The deposit of these securities was governed by the terms of the note and thus the securities were also collateral for the earlier loan which was still unpaid. It is immaterial that Chase did not perform until July 26 the mechanics of making entries that the bonds were collateral for the earlier note as well as the new note as Chase had the right to do so at all times.

 We have a further question whether under the law of New York the debt of $540,000 was "disproportionately small as compared with the value" of the pledged bonds. Section 272 of the New York Debtor and Creditor Law reads in part:

"Fair consideration is given for property * * *

"(b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."

Here the transaction whereby Chase transferred the collateral from one note to the other may be construed as receiving property as security for an antecedent debt. The question then is whether the debt was "disproportionately small as compared with the value of the property."

The value of the securities pledged to repay the loan was not disproportionately large as compared with the amount of the loan. At the time Chase retained the $100,000 Housing Authority Bonds as collateral for the unpaid May note, Eastern owed $540,000 to Chase. At this time the face value of all the bonds held as collateral was $875,000, but the market value on July 26, 1951 was only $776,500 due to a drop in bond prices. The record shows that the market value of the $500,000 Housing Authority Bonds purchased in March of 1951 dropped from 98 to around 75 six months later in September. Obviously the value of the property pledged was not disproportionate to the debt. See Epstein v. Goldstein, 2 Cir., 1939, 107 F.2d 755, where this Court found that a pledge of 52% more than the debt was not disproportionate under the New York statute. Here the pledge was worth 43% above the debt.

While the district judge did not make findings with respect to § 272 of the New York Debtor and Creditor Law, the record before us permits of no other conclusion than that, on all the circumstances, there was fair consideration for the pledge of the $100,000 Housing Authority Bonds.

The record amply supports the conclusion of the district judge that Chase did not unlawfully convert the bonds. It is also clear that there was fair consideration for the pledge of the bonds. For the reasons indicated in the course of this opinion, it is unnecessary for us to pass on the alleged errors pertaining to the reception of evidence.

The judgment of the district court is affirmed.