JANOS SEBOK and MARIE SEBOK (FORMERLY MARIA PAJGER), Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sebok v. Commissioner
Docket No. 14035-78.
United States Tax Court
T.C. Memo 1982-4; 1982 Tax Ct. Memo LEXIS 745; 43 T.C.M. (CCH) 255; T.C.M. (RIA) 82004; January 5, 1982. Martin S. Streit, for the petitioners. David M. Brandes, for the respondent. EKMAN
MEMORANDUM FINDINGS OF FACT AND OPINION EKMAN, Judge: Respondent determined that petitioners are liable as transferees for their transferor's unpaid Federal income taxes for its taxable year ending March 31, 1973 in the following amounts: YEAR
DEFICIENCY
SEC. 6651(a)
SEC. 6653(a)
1973
$ 16,502
$ 4,126
$ 825
The issues before us for decision are: (1) whether *747 petitioner Maria Sebok (Maria) is liable as a transferee of Marpa Realty Corporation (Marpa); (2) whether petitioner Janos Sebok (Janos) is liable as a transferee of a transferee; (3) whether Marpa was liable for the taxes determined by respondent; and (4) whether Marpa is liable for additions to tax under sections 6651 (a) and 6653(a). FINDINGS OF FACT
Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. By notice of deficiency dated March 9, 1976, respondent determined deficiencies and additions to tax against Marpa in the amounts set forth above for the fiscal year ended March 31, 1973. Marpa has failed to file a petition with this Court or otherwise respond to the notice of deficiency. Maria and Janos Sebok resided in Monroe, Connecticut at the time their petition herein was filed. They were married in March 1973. Maria had previously been married to Julius Pajger, who died in 1972. Maria could not speak English, but did speak Hungarian and Slovak. Maria and Julius Pajger formed Marpa under New York law in 1968. Marpa was later dissolved by proclamation of *748 the Secretary of the State of New York on December 15, 1975, for its failure to file New York State tax returns in 3 consecutive years. When Marpa was formed, its sole asset was an apartment building and land located in New York City at 1556 Second Avenue in Manhattan. After Julius died, Maria became Marpa's president and sole shareholder. Later in 1972, Marpa sold the property for $ 140,000 to Julnor Realty Corporation (Julnor). Julnor paid for the property with (1) a $ 52,000 purchase money mortgage, (2) $ 7,500 cash on signing of the contract, (3) $ 7,500 cash on delivery of the deed, and (4) the assumption of three mortgages already existing on the property aggregating $ 73,000. The purchase money mortgage was subordinate to the three existing mortgages. Marpa used $ 7,500 cash to pay commissions and legal fees which it had incurred on the sale. After the sale, Marpa's sole asset was the mortgage note receivable. [1] On the date of the sale, the mortgage note had a fair market value of approximately $ 47,676. It was payable over 10 years in monthly installments of $ 474.81 beginning June 15, 1972, except for a lump sum payment of $ 10,000 due in January, 1973. *749 In 1975, Maria, in her capacity as Marpa's president, assigned the mortgage note to herself for $ 1 consideration. Immediately thereafter, she personally assigned the note to Janos as a gift. At the time the assignments were executed, $ 41,308.47 remained to be paid on the mortgage. Julnor had timely made the $ 10,000 lump sum payment due in 1973, and had made 33 other regular monthly payments totalling $ 15,668.73. [2]Marpa had no assets remaining after the assignment. [3]
Martin Mandell, an attorney, represented Marpa in the 1972 sale of the Second Avenue property. He was a close friend of Maria and her late husband Julius, and could converse with them in Mungarian. At various times, he had arranged for other clients of his to lend them money upon his guarantee. Marpa paid him $ 7,500 as legal fees and commission for his role in the 1972 sale. Later, after Julnor had paid Marpa $ 10,000 on the purchase money mortgage, Maria gave him $ 7,200 to satisfy the loans she had made through him. [4]
*750 Joseph Dancik, a public accountant who could speak Slovak, prepared Marpa's Federal income tax return for its fiscal year ending March 31, 1970. In 1972, he assisted Maria and Marpa with an audit of this return which occurred shortly after the Second Avenue property was sold. In her capacity as Marpa's president, Maria signed a consent to income tax changes with respect to the audit, and agreed to a deficiency $ 3,819. However, at the time of trial, no part of that deficiency had been paid. Dancik also prepared the tax returns for a restaurant, the Kesbash, which Maria owned and operated. Maria testified at trial that she relied on Mandell and Dancik to handle Marpa's tax affairs, including a section 333 or section 337 liquidation, for its taxable year ending March 31, 1973. However, neither she nor Dancik recalled that Dancik prepared a tax return for Marpa that year. Dancik and Mandell both denied being responsible for a section 333 or section 337 liquidation of Marpa. Mandell also denied preparing any tax returns for Marpa, claiming that he did no tax work for Maria, Marpa, or any other of his clients. In his statutory notice of deficiency for Marpa's taxable year *751 ending March 31, 1973, respondent determined that in 1972 Marpa realized a $ 54,429 gain on the sale of its property, and had received $ 1,331 of rental income. After allowing deductions for depreciation, painting, and heating expenses, respondent determined a deficiency of $ 16,502 in tax plus additions as set forth above. At the time of trial, respondent had assessed Marpa's deficiencies in income taxes and additions to taxes for the year in issue, plus statutory interest thereon, but no part of these amounts had been paid. OPINION
Respondent asserts that Maria is liable, as a transferee, for payment of Marpa's income taxes, and that Janos is also liable for such payment, as a transferee of a transferee, Maria. Section 6901. Respondent bears the burden of showing that Maria and Janos are subject to transferee liability. Section 6902. 1. Maria's Transferee Liability. Maria is a transferee because she is a shareholder of a dissolved corporation. Section 301.6901-1(b), Income Tax Regs. This fact alone is not sufficient to subject her to transferee liability for the taxes here in controversy. Before the liability of Marpa may be assessed and collected against *752 her, respondent must show that he could reach to her for Marpa's taxes as a matter of New York law. Commissioner v. Stern, 357 U.S. 39 (1958); [5]Segura v. Commissioner, 77 T.C. 734 (1981); John Ownbye Co., Inc. v. Commissioner, 645 F.2d 540 (6th Cir. 1981), revg. on other grounds a Memorandum Opinion of this Court. We find that respondent has established Maria's liability under State law. See generally N.Y. Debtor and Creditor Law (hereinafter cited as N.Y. Law), art. 10, secs. 270-281 (McKinney 1945 and Supp. 1980-81). Marpa's assignment of the Julnor mortgage note receivable to Maria was a conveyance. [6] The assignment was not made for fair consideration [7] because Maria gave Marpa only *753 one dollar, while the mortgage she received in return was expected to generate a cash flow of $ 474.81 monthly until 1982. Although Julnor had already made 33 regular payments totalling $ 15,668.73, another $ 41,308.74 of principal and interest remained to be paid on the note. At the time of the assignment, the mortgage was Marpa's sole asset. Because Marpa then had existing liabilities, the assignment rendered Marpa insolvent. [8] Under these circumstances, the assignment by Marpa to Maria was fraudulent as a matter of law. [9] Section 278, N.Y. Law, provides that where a conveyance is fraudulent as to a creditor, such creditor may have the conveyance set aside, or may disregard the conveyance and attach or levy execution upon the property conveyed. Because the United States is a creditor of Marpa, [10] and because it can reach through to Maria under N.Y. Law sec. 278, Maria is liable as a transferee for the deficiency and additions to tax of Marpa. Section 6901(a). *754 2. Janos's Liability as a Transferee of a Transferee. Janes is a donee, and thus is a transferee. Since his donor, Maria, is also a transferee, he is thus a transferee of a transferee. Section 6901(h). Janos, like Maria, is subject to transferee liability. He received the Julnor mortgage note receivable from Maria as a gift. Under New York law, a creditor may reach fraudulently conveyed property, which is held by any person, so long as that person was not a purchaser of the property for fair consideration without knowledge. [11] The mortgage was fraudulently conveyed from Marpa to Maria, as discussed, supra, and Janos was not a purchaser for fair consideration. [12] Although petitioners argue that Janos gave Maria consideration for the property in the form of love, affection, and promises of care, such consideration is not "fair consideration" within the meaning of N.Y. Law sec. 272. [13] Thus, Janos can be reached under N.Y. Law sec. 278, and, as a transferee of a transferee, he is subject to the transferee liability procedures of the Federal income tax law. Section 6901. *755 3. Marpa's Tax Liability. As transferees, petitioners have the burden of proving that respondent's determination of their transferor's liability was incorrect. Section 6902; Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioners challenge respondent's determination of Marpa's tax liability on four grounds. First, they claim that Marpa was liquidated under section 333 or section 337 and thus did not have to recognize gain on the sale. Second, they maintain that Mandell received $ 14,700 in legal fees and commissions on the sale of the Second Avenue property which reduced Marpa's realized gain on the sale. Third, they contend that Marpa should have been allowed an additional depreciation deduction. Fourth, they assert that $ 1,331 of deposits are not includible in Marpa's income because respondent failed to adduce evidence at trial to sustain his determination. Petitioners argue that they relied on Mandell and Dancik to file a plan of corporate liquidation for Marpa. However, Mandell denied involvement with Marpa's tax affairs. Dancik also denied that he did tax work for Marpa, other than preparing its return for the taxable year ending March 31, 1970. *756 Even if petitioners had proved that they relied on Dancik and Mandell, they have not shown that Marpa adopted a plan of liquidation under section 333 or section 337, or that the alleged liquidation was accomplished in strict compliance with the statutory requirements of those sections. Their purported reliance on Mandell and Dancik to file a plan is insufficient to establish that a plan ever existed or that it was followed. Petitioners have failed to sustain their burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure. Thus, we conclude Marpa was not liquidated under section 333 or section 337. Petitioners also contend that Maria, as Marpa's president, paid Mandell $ 14,700 in legal fees and commissions on the sale of the Second Avenue property. Respondent allowed $ 7,200 in the notice of deficiency and has conceded that petitioners should be allowed an additional $ 300 in determining Marpa's gain on the sale. However, respondent contends that the remaining $ 7,200 which Maria gave Mandell was repayment of loans Maria had personally borrowed through Mandell. Mandell testified that the $ 7,200 he received was a repayment, not a commission, and he produced two *757 receipts substantiating his testimony: one receipt acknowledges Marpa's payment to him of $ 7,500 commissions and legal fees connected with the sale of the Second Avenue property, while the other acknowledges Maria's payment in full of $ 7,200 for all legal fees, loans, and interest on loans outstanding. Petitioners have offered no evidence, other than Maria's controverted testimony, which might show that the $ 7,200 paid to Mandell in January 1973 was part of his commission on the Second Avenue property sale. Based on the evidence before us, we conclude that the remaining $ 7,200 which Maria gave Mandell was not commission, and therefore Marpa's costs of sale were $ 7,500, not $ 14,700.Thus, we find that, except for $ 300 conceded by respondent, Marpa's gain on the sale of the Second Avenue property is in the amount determined by respondent's notice of deficiency. Finally, petitioners argue that Marpa was entitled to $ 6,000 of additional depreciation deductions for its taxable year ending March 31, 1973. Moreover, they contend that respondent improperly included in Marpa's income $ 1,331 of deposits. They have introduced no evidence to support these assertions. Without evidence, *758 we are unable to evaluate their claims. Petitioners have failed to sustain their burden of proof, Rule 142(a), Tax Court Rules of Practice and Procedure; section 6902, and accordingly, respondent's determination will be upheld. 4. Section 6651(a). Respondent determined an addition to Marpa's tax under section 6651(a) for late filing. Petitioners are not liable for the addition if they can show that Marpa's failure to file was due to reasonable cause and not willful neglect. Section 6651(a). Petitioners argue that Marpa relied on Mandell, the attorney, or Dancik, the public accountant, to handle its taxes. Reasonable cause for failure to file may exist where taxpayers relied on the tax advice of a qualified accountant or attorney. See, e.g., Coldwater Seafood Corp. v. Commissioner, 69 T.C. 966 (1978); West Coast Ice Co. v. Commissioner, 49 T.C. 345 (1968); Portable Industries, Inc. v. Commissioner, 24 T.C. 571 (1955); Garrett Holding Corporation v. Commissioner, 9 T.C. 1029 (1947). However, both Mandell and Dancik deny handling Marpa's 1973 tax returns, the tax aspects of the Second Avenue property *759 sale, or preparation of the purported corporate liquidation. Because those two unequivocally deny giving tax advice to Maria or Marpa, [14] and because petitioners have failed to introduce other evidence tending to show that Marpa had reasonable cause for failing timely to file its return, we find that the addition to tax for late filing was properly imposed. Therefore petitioners are liable for the addition as transferees pursuant to section 6901. 5. Section 6653(a). Section 6653(a) provides that if any part of an underpayment in income taxes is due to negligence or intentional disregard of rules and regulations, respondent may add to the tax an amount equal to 5 percent of the underpayment. Petitioners contest respondent's addition for negligence to Marpa's taxes on grounds that Marpa relied on its attorney or public accountant to file the returns properly. *760 However, as we have previously shown, the attorney and public accountant did not advise Marpa on the tax treatment of the gain on the sale of the Second Avenue property. Furthermore, Marpa's president and controlling shareholder, Maria, was not ignorant of the business world and knew that Marpa had to file tax returns. She had employed Dancik to oversee tax returns and accounting for the Kesbash Restaurant, Mandell to assist on the sale of the Second Avenue property, and had herself executed the assignments of the Julnor mortgage note. As sole executive officer of Marpa, Maria failed to cause Marpa to file a return for its taxable year ending March 31, 1973. Thus, Marpa was negligent with respect to its underpayment of taxes. Accordingly, we find that respondent properly determined an addition to tax under section 6653(a) on Marpa's return for the year in issue and petitioners, as transferees, are liable therefor. Decision will be entered for Respondent. Footnotes
1. This statement appears in the stipulation of facts, and the record does not disclose the disposition of the remaining $ 7,500 cash received by Marpa.↩
2. The record does not disclose whether these payments were made to Marpa or Maria. ↩
3. This statement appears in the stipulation of facts.↩
4. Although the record is far from clear, it appears that Maria caused Marpa to pay $ 7,200 to Mandell in satisfaction of her personal liabilities.↩
5. In Commissioner v. Stern, 357 U.S. 39, 49↩ (1958), the Supreme Court stated that sec. 311 of the 1939 Code (predecessor to sec. 6901) was purely procedural, and gave respondent an alternative means of assessing and collecting deficiencies from transferees who would otherwise be reachable under State law. Justice Black dissented on grounds that transferee liability should be decided under general principles of equity.
6. "'Conveyance' includes every payment of money, assignment, release, transfer * * *." N.Y. Law sec. 270. Thus, the New York courts have held that conveyances include such things as a confession of judgment which creates a lien or encumbrance, Spear v. Spear, 421 N.Y.S.2d 277 (1979), a diversion of earnings from corporation to shareholders, dividends, and the surrender of sublease to controlling shareholders, United States v. 58th Street Plaza Theatre, Inc., 287 F. Supp. 475↩ (S.D.N.Y. 1968). 7. Fair consideration is received for property when a fair equivalent is conveyed. N.Y. Law sec. 272. The New York courts have held that an interest in land worth $ 2,884.79 was not fair consideration for cancellation of a $ 20,115.21 indebtedness. Hopkins v. Tinklepaugh, 247 N.Y.S. 486, affd. 251 N.Y.S. 1019 (App. Div. 1931). Bonds of face value $ 875,000 but fair market value of $ 776,500 were fair consideration when deposited as security for debts of $ 540,000 in view of the fact that the value of the collateral was continuing to drop. Troll v. Chase National Bank of City of New York, 257 F.2d 825 (2d Cir. 1958). However, fair consideration is a question of fact to be determined in each case. Vinlis Construction Co. v. Roreck, 325 N.Y.S.2d 457 (1971), affd. 351 N.Y.S.2d 648, appeal dismissed in part and denied in part, 320 N.E.2d 277↩ (Ct. App. 1974). 8. Under N.Y. Law sec. 271 "[a] person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." After the assignment, Marpa had no assets, yet it was being audited for its taxable year ending March 31, 1973, the year it sold the Second Avenue properties and for which it had paid no taxes. Further, Maria had already signed a consent to a deficiency of $ 3,819 for Marpa's taxable year ended March 31, 1970, which had been assessed but not paid. Thus, at the time the assignment was made, Marpa had a matured liability of $ 3,819, and was being audited to determine the amount of additional liabilities. Under New York law, only assets with present salable value are considered in determining insolvency. Glenmore Distilleries Company v. Seideman, 267 F. Supp. 915↩ (E'D.N.Y. 1967).
9. "Every conveyance made * * * by a person who is * * * thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." N.Y. Law sec. 273. For example, where a husband conveyed his only asset, a residence worth $ 100,000, to his wife for consideration of $ 8,000, with an outstanding debt of $ 30,000, the conveyance was fraudulent. Orbach v. Pappa, 482 F. Supp. 117↩ (S.D.N.Y. 1979). 10. The language of sec. 270, N.Y. Law, is broad enough to include the United States Government and the Internal Revenue Service: "'Creditor' is a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent." Cf. De West Realty Corp. v. Internal Revenue Service, 418 F. Supp. 1274 (S.D. N.Y. 1976) (United States treated as a creditor with respect to taxes owing). Also United States v. 58th Street Plaza Theatre, Inc., supra↩, n. 2.
11. N.Y. Law sec. 278. ↩
12. N.Y. Law sec. 272, supra↩, n. 3. 13. See, e.g., Rush v. Rush, 244 N.Y.S.2d 673 (A.D. 1963) (love, affection, and conjectural promise of future support not fair consideration); Vinlis Construction Co. v. Roreck, supra, n. 3 (promise of future support not fair consideration); Petition of National City Bank of New York, 58 N.Y.S.2d 620↩ (App. Div. 1945).
14. See, e.g., Anderson v. Commissioner, T.C. Memo. 1956-178; Hale v. Commissioner, a Memorandum Opinion of this Court dated October 22, 1953. Also Heman v. Commissioner, 32 T.C. 479 (1959); Ryweck v. Commissioner↩, a Memorandum Opinion of this Court dated February 11, 1954.